## STANDARD NAT. BANK et al. v. GARFIELD NAT. BANK et al.

(Supreme Court, Appellate Division, First Department. December 7, 1900.)

1. FRAUDULENT CONVEYANCES—INSOLVENT CORPORATION—ATTACK—TRANSFERRED PROPERTY—EXECUTION SALE—CREDITOR OF TRANSFEREE.

Where an insolvent corporation executed a bill of sale of its personal property in consideration of the assumption of its debts by the transferee, which was also insolvent, and immediately afterwards assigned for the benefit of creditors, and defendant, a creditor of the transferee in good faith, obtaining judgment against it levied and sold the property conveyed by the bill of sale to satisfy the judgment, a creditor of the transferror cannot compel the judgment creditor to account for the proceeds of the sale, since the bill of sale, though voidable, was not void, and while it remained in force the transferee had a leviable interest in the property on which its judgment creditors could levy and secure a good title.

2. CORPORATIONS—FOREIGN—FRAUDULENT CONVEYANCES.

Where a foreign insolvent corporation executed a bill of sale of its personal property in consideration of the assumption of its debts by the transferee, such transfer is not invalid under Laws 1892, c. 688, § 48, providing that no transfer by a corporation, when insolvent, with intent

to prefer creditors, shall be valid, and that any person receiving such transfer shall be bound to account therefor, since such statute applied only to domestic corporations.

**8. SAME—FOREIGN LAW—EFFECT.**
    Where a foreign insolvent corporation executed a bill of sale of its personal property in consideration of the assumption of its debts by the transferee, such transfer could not be attacked by creditors as invalid under the laws of the state of the transferror's incorporation providing that a transfer by an insolvent corporation should be void as against creditors, since such law was a general one, and did not form part of the charter of such corporation, and therefore had no extraterritorial effect.

Appeal from special term, New York county.

Action by the Standard National Bank and another against the Garfield National Bank, impleaded with others. From a judgment in favor of plaintiffs (63 N. Y. Supp. 312), both parties appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, and INGRAHAM, JJ.

Jonathan C. Ross, for Standard National Bank.
Henry B. Twombly, for National Broadway Bank.
John J. Adams, for Garfield National Bank.

McLAUGHLIN, J. This action by two judgment creditors was brought to set aside a bill of sale made by the National Silk Label Company, a foreign corporation, to the firm of William MacFarlane & Co., upon the ground that it was fraudulent and void, having been given with intent to hinder, delay, and defraud creditors; and to compel the defendant, the Garfield National Bank, to account for the proceeds derived from a sale of the property covered by such bill of sale under an execution issued upon a judgment which it had obtained against MacFarlane & Co. The plaintiffs had a judgment setting aside the bill of sale and directing the Garfield National Bank to account for the proceeds derived from the sale under its execution to all of the creditors of the silk label company. From this judgment the plaintiffs and the Garfield National Bank have appealed; the plaintiffs upon the ground that they are entitled to a preference over the other creditors of the silk company, and the Garfield National Bank upon the ground that by virtue of its levy and sale, and the payment over of the proceeds of the property sold under the execution, it is entitled to hold same, irrespective of the other creditors of the silk company. There is no dispute between the appealing parties as to the material facts involved in the subject-matter of the litigation. These facts are substantially as follows: On and for some time prior to the 25th of April, 1896, the firm of William MacFarlane & Co. was engaged in manufacturing "gum silk," and for the purpose of utilizing the same the members of MacFarlane & Co., or the relatives of their families, organized, under the statutes of New Jersey, a corporation,—the National Silk Label Company. The business of the corporation and of the co-partnership was carried on separately, but in the same building, and both had offices at 81 Grand street, in the city of New York. On the 25th of April, 1896, the co-partnership and the corporation were insolvent, and unable to meet their maturing obligations, including certain notes held by the plaintiffs

and the Garfield Bank. On that day the silk label company executed to MacFarlane & Co. a bill of sale of its personal property, the consideration of which was the sum of one dollar and the assumption by MacFarlane & Co. of all the debts of the silk company. On the following Monday—April 27th—MacFarlane & Co. made a general assignment for the benefit of creditors to one Richardson, who took possession of the property assigned, which included certain personal property at 81 Grand street, in this city. On the 29th of July following, the Garfield National Bank obtained a judgment against the firm of MacFarlane & Co. for $14,759.95, upon which, on the 11th of September, it caused to be issued and delivered to the sheriff of the county of New York an execution under and by virtue of which he levied on that day upon certain goods which the silk company, on the 25th of April previous, had at 81 Grand street, and which on that day, by the bill of sale above referred to, it sold and delivered to MacFarlane & Co. Under the levy thus made, the goods, on the 29th of September, were sold, and the proceeds of the sale, amounting to $12,875, paid to the Garfield Bank to apply on its judgment. On the 22d of September, 1896, one of the plaintiffs, the National Broadway Bank, brought an action to set aside the general assignment made by MacFarlane & Co. upon the ground that it was made with intent to hinder, delay, and defraud creditors, and after a trial had the same was, on the 20th of July, 1897, set aside, but nothing was realized by the plaintiff under the judgment thus obtained. On the 6th of November, 1896, this action was brought by the National Broadway Bank, in which the Standard National Bank subsequently joined, which, after a trial had, resulted in the judgment appealed from. Upon the appeal from such judgment the plaintiff banks contend, as they did in the court below, that by the commencement of this action they acquired an equitable lien upon the property of the silk company, or so much of it as is necessary to satisfy their claims. Their contention is that the bill of sale by the silk company to MacFarlane & Co. was void; that the assignment by McFarlane & Co. was also void; that, such bill of sale and assignment being void, they had the right to take and hold, for the purpose of satisfying their claims, sufficient property of the silk company which was sold by it to MacFarlane & Co., and by such firm assigned to Richardson; that this right was not destroyed by the levy and sale under the execution referred to; that the only effect, so far as they are concerned, of such levy and sale, was to change the property sold into money, and that such money in law belongs to them, and for which the Garfield Bank must account. The Garfield Bank contends that MacFarlane & Co., at the time the levy was made, had not only the title, but the possession, of the property sold, and therefore the bank had a legal right to make such levy and sale for the purpose of satisfying the judgment which it held against MacFarlane & Co., and, having this right, it is under no obligation to account to the plaintiffs, or any one else, for the proceeds derived from such sale.

The conclusion at which we have arrived renders it unnecessary for us to pass upon many of the questions discussed in the briefs submitted. The bill of sale from the silk company to MacFarlane &

·Co., accompanied by a change of possession of the property specified in the bill of sale, transferred to MacFarlane & Co. the legal title of the property sold. The bill of sale was not, as contended by the plaintiffs, absolutely void, either under the statutes of this state or the statutes of New Jersey. It was, if made as contended by the plaintiffs, not void, but voidable; and, so long as MacFarlane & Co. held both the title and the possession, it could give good title to a purchaser, and this irrespective of whether the sale was for cash or in payment of an antecedent debt. If this conclusion be correct, then it necessarily follows that, while the property remained in the possession of MacFarlane & Co., and before the bill of sale had been set aside, repudiated, or at least attacked in some way by either the silk company, its stockholders, or creditors, it could be levied upon and sold for the purpose of satisfying a judgment against MacFarlane & Co. Section 48 of the stock corporation law of the state of New York (chapter 688, Laws 1892) has no application. This section, among other things, provides that:

"No conveyance, assignment or transfer of any property of any such corporation by it, or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation shall be valid. Every person receiving, by means of any such prohibited act or deed of the corporation, shall be bound to account therefor to its creditors, or stockholders or other trustees. * * * Every transfer or assignment or other act done in violation of the foregoing proceedings of this section shall be void."

The silk company was a foreign corporation, and the section of the statute quoted applies to domestic corporations. It does not apply to foreign corporations. In Vanderpoel v. Gorman, 140 N. Y. 569, .35 N. E. 934, 24 L. R. A. 550, the court, referring to this section, said:

"We have no doubt that this section refers solely to domestic corporations. The whole of the chapter from which the section is taken is, in substance, a revision of the law relating to certain classes of corporations, as contained in the Revised Statutes and their amendments, and it is plain that those statutes generally, if not in every provision, refer to domestic corporations only."

See, also, Coates v. Donnell, 94 N. Y. 168; Lane v. Wheelwright, 69 Hun, 182, 23 N. Y. Supp. 576.

Nor has section 64 of chapter 185 of the Laws of 1896 of New Jersey any application. This section, among other things, provides that:

"Whenever any corporation shall become insolvent, or shall suspend its ordinary business for want of funds to carry on the same, neither the directors nor any officer or agent of the corporation shall sell, convey, assign or transfer any of its estate, effects, choses in action, goods, chattels, rights or credits, lands or tenements, nor shall they or either of them make any such sale, conveyance, assignment or transfer in contemplation of insolvency and every such sale, conveyance, assignment or transfer shall be utterly null and void as against creditors, provided that a bona fide purchase, for a valuable consideration, before the corporation shall have actually suspended its ordinary business, by any person without notice of such insolvency, or of the sale being made in contemplation of insolvency, shall be invalidated or impeached."

This statute of New Jersey is a general one. It is not a part of the charter or the organic law of the silk label company, and there-

fore has, in and of itself, no extraterritorial effect. As was said in Hoyt v. Thompson's Ex'rs, 19 N. Y. 225, quoting the words of Chief Justice Ruggles:

"It is a conceded principle that the laws of a state have no force proprio vigore beyond its territorial limits. But the laws of one state are frequently permitted, by the courtesy of another, to operate in the latter for the promotion of justice, where neither that state nor its citizens will suffer any inconvenience from the application of the foreign law;" and, quoting the words of Paige, J.: "The statutes and laws of a country have no intrinsic extraterritorial force. They bind only its own citizens, and citizens of other countries while within its jurisdictional limits; and they bind directly only property within those limits. They do not affect or bind property out of its territory, or persons not residents therein. Whatever extraterritorial force those statutes and laws are permitted to have is the result of the voluntary consent of other nations. This consent is accorded upon the principle of comity of nations alone, and not from any international obligation to yield to such statutes and laws the slightest obedience. But no nation, on any recognized principles of comity, is, morally or otherwise, bound to enforce foreign laws prejudicial to its own rights, or the rights of its own citizens."

And as was also said in Mabon v. Electric Co., 156 N. Y. 201, 50 N. E. 806:

"While the laws of a foreign state have no force as such in this state, still our courts uphold the title of a foreign assignee or receiver upon the principles of comity. If the title is by virtue of a voluntary conveyance or transfer, it is sustained as against all, including even domestic, creditors; but, if it depends upon a foreign statute or judgment, it is sustained against all except domestic creditors."

What is here said of the statute of another state of course does not apply to the statute which forms a part of the charter of the corporation, or under which it was organized, and which must be taken notice of by all persons dealing with the corporation. The distinction between a general statute and one which forms a part of the organic law of a corporation is pointed out in Hoyt v. Thompson's Ex'rs, supra. Judge Comstock, delivering the opinion of the court in that case, said:

"There is no doubt that all persons dealing with or deriving title from a foreign corporation are bound to take notice of every limitation upon its powers contained in its charter. The question of corporate powers must, of necessity, enter into all such dealings. But other laws of a general nature, enacted by a foreign state, although tending to abridge or modify those powers, fall within the well-settled rule that, where knowledge of a foreign law is material upon a question of good faith, such knowledge must be shown. This rule must be applied to the case before us. Thompson was a citizen of New York, and purchased the bond and mortgage in controversy within this state. As his title rested upon the assignment of the Morris Co. to the state of Michigan, it would be defective if the assignment were forbidden by the charter of that company. But the statute of 1829 related to all the corporations in the state of New Jersey. It was substantially an insolvent law, applicable to those bodies, and having no extraterritorial force."

Here no claim is made but that the Garfield Bank acted in good faith, not only in procuring its judgment against MacFarlane & Co., but also in issuing the execution, and causing a sale to be made under it of the property held by MacFarlane & Co. The levy, it will be remembered, was made by a creditor of the state upon goods situ-

ated in the state; and under such circumstances we do not think —notwithstanding the rule of comity existing between the states— effect should be given to a statute of a foreign state for the purpose of depriving such creditor of a lien acquired by him under the laws of our own state. The Garfield Bank had the right, under our laws, to make the levy which it did. It could treat, as it did, the assignment made by MacFarlane & Co. to Richardson as of no effect. Bank v. Risley, 19 N. Y. 369; Becker v. Torrance, 31 N. Y. 631; Hess v. Hess, 117 N. Y. 308, 22 N. E. 956. Having this right, it cannot, after a sale has been made, be called upon to account, at the instance of a judgment creditor of the silk company or MacFarlane & Co., for the proceeds derived from the sale. The recent case of Lopez v. Campbell, 163 N. Y. 340, 57 N. E. 501, is in point. There the court said:

"The principle is well established that, where tangible personal property has been levied upon by execution prior to the commencement of an action or proceeding in the nature of a creditors' bill to set aside transfers or judgments, the property is to be regarded as that of a judgment debtor; and, where there was a prior valid levy or lien, it is superior to any subsequent lien of the creditor who instituted such action or proceeding. A creditor is entitled to the preference acquired in the ordinary course of legal procedure, notwithstanding the insolvency of the corporation."

And Wise v. Grant, 140 N. Y. 593, 35 N. E. 1078, is also in point. In that case it was held that, "where a sale and delivery of goods is procured by fraudulent representation on the part of the purchaser, the title and possession pass to him notwithstanding the fraud, subject to the right of the vendor to rescind the contract of sale"; and until he "has exercised his option to rescind either directly or by some act in disaffirmance of the sale, the purchaser has a leviable interest in the goods, and, if levied upon by attachment or execution against the purchaser prior to rescission" an action of replevin to recover the goods is not maintainable. The Garfield Bank held a valid judgment against MacFarlane & Co., upon which it caused to be issued an execution, under which the levy was made upon property both the title and possession of which were at that time in MacFarlane & Co. The silk company did not then have either the title or possession. It had at most only the right to reclaim possession by rescinding the bill of sale theretofore given upon the ground that there was either no adequate consideration for it, or that it was made with intent to hinder, delay, and defraud creditors. The creditors or stockholders might also rescind upon the same ground. But to us it seems clear that, so long as the bill of sale remained in full force and effect, until it had been questioned or assailed in some way either by the silk company, its stockholders or creditors, MacFarlane & Co. had a leviable interest, not only as against the silk company, but its creditors, stockholders, and all others. Upon the execution being delivered to the sheriff, it was his duty to levy and sell, and by such levy a legal lien was acquired upon the property levied upon which ripened into a good legal title when the sale was made. The bank, after the proceeds of the sale had been delivered to it, was substantially in the same position as it would have been had MacFar-

lane & Co. made no assignment, but instead had sold the property themselves, and, after receiving the proceeds of the sale, paid it to the bank in satisfaction of the debt.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant the Garfield National Bank to abide the event. All concur.