# WILLIAMS *v.* GAYLORD.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 208. Argued April 8, 9, 1902.—Decided May 19, 1902.

This suit was brought by petitioner, as trustee of a mortgage. *Held*, that when a corporation sells or incumbers its property, incurs debts or gives securities, it does business, and a statute regulating such transactions does not regulate the internal affairs of the corporation.

THIS suit was brought by the petitioner as trustee of a mortgage made by the Gold Hill Mining Company, a corporation of West Virginia, upon certain mining ground in the State of California. Subsequently to the execution of the mortgage

the corporation, in the conduct of its mining operations in the State of California, became indebted to the respondents for materials, labor and supplies. Mechanics' and materialmen's liens were filed by respondents and judgments obtained by them upon which executions were issued and the property mortgaged was sold. The respondents became its purchasers.

The corporation made default in the foreclosure suit, and a decree *pro confesso* was taken against it. The respondents pleaded their judgments and the titles which were claimed thereunder; and pleaded, further, that the mortgage was void because it had not been ratified by the stockholders of the corporation as required by a statute of California, passed April 23, 1880, and entitled " An act for the further protection of stockholders in mining companies," section 1 of which act is as follows:

" SEC. 1. It shall not be lawful for the directors of any mining corporation to sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation, nor to purchase or obtain, in any way, any additional mining ground, unless such act be ratified by the holders of at least two thirds of the capital stock of such corporation. Such ratification may be made either in writing, signed and acknowledged by such stockholders, or by resolution, duly passed at a stockholders' meeting called for that purpose."

The Circuit Court sustained the defences, 96 Fed. Rep. 454; and its ruling was affirmed by the Circuit Court of Appeals. 102 Fed. Rep. 372.

The mortgage was given to secure one hundred coupon bonds of $500 each. They were dated July 1, 1890. The mortgage bore the same date, and the manner and authority for its execution, the record exhibits, as follows, being the minutes of a meeting held June 5, 1890:

" The meeting was called to order by C. Littlefield, who nominated G. Livingston Morse, temporary chairman; nomination was seconded by W. W. Tucker and unanimously carried.

" C. Littlefield then proposed W. W. Tucker for temporary

secretary; motion was seconded by R. H. Pettigrew, Jr., and was unanimously carried.

"Waiver of notice of corporators was then agreed to by all present as per roll-call.

"Roll-call of incorporators being made, all were found present as follows: M. J. Shoecraft, Calvin Littlefield, G. Livingston Morse, R. H. Pettigrew, Jr., and W. W. Tucker.

" The chairman said : We were now ready for business, whereupon Mr. M. J. Shoecraft presented a duplicate copy of papers of incorporation, and a telegram from Secretary of State of West Virginia, stating that the charter of this company was duly filed June 23, 1890, which was adopted.

"On motion of W. W. Tucker, seconded by R. H. Pettigrew, Jr., it was—

" *Resolved,* That the said Gold Hill Mining Company issue one hundred first-mortgage bonds, of the denomination of five' hundred dollars each, each bond bearing date of July 1, 1890, and bearing interest at the rate of ten per cent per annum, payable semi-annually, on the first day of January and July in each year, and to run five years from July 1, 1890; with the privilege of the said company paying off and redeeming the same sooner, by giving to the holders of said bonds six months' notice of the company's intention thus to do; to pay off said bonds and redeem the same on any day interest is payable, or on payment of six months' interest in advance; and the president and the secretary of said company are hereby authorized and directed to execute said bonds and mortgage for said company, and the said board hereby authorize and direct the seal of said company to be affixed to the same.

"On motion of C. Littlefield, seconded by M. J. Shoecraft, the chairman, G. L. Morse, was elected trustee for the bondholders. Motion carried.

"On motion of W. W. Tucker, seconded by R. H. Pettigrew, Jr., Mr. G. L. Morse was appointed to draw up a proper bond, have same executed and lithographed; also a stock certificate book of two hundred certificates, total cost not to exceed ninety-five dollars.

"On motion of M. J. Shoecraft, seconded by G. L. Morse, it

was voted that the incorporators of the Gold Hill Mining Company be named as directors of said company.   Motion carried.

"On motion of C. Littlefield, seconded by M. J. Shoecraft, the company's seal was ordered to be made, and Mr. Shoecraft be a committee to have the same made.   Motion carried.

"Mr. Shoecraft reported that the by-laws were not quite ready, and the chairman suggested that he report a full set at a future meeting.

"On motion, the meeting was declared adjourned to the second Tuesday in July, 8th inst.

"W. W. TUCKER,
    "Temporary Secretary."

It was testified that the gentlemen present at the meeting held all of the stock of the company.

The record also contains the minutes of a meeting held July 10, 1890, at which meeting a president, vice president, secretary and treasurer and general manager were elected.   The following resolution was passed:

"On motion of Mr. Morse, seconded by Mr. Pettigrew, resolved, That the directors of this company be authorized and directed to purchase of M. J. Shoecraft the mines formerly known as the Nevada City Gold Quartz Mining Company, and pay therefor one hundred and sixty thousand shares of the capital stock of this company, being its total issue, and twenty-five thousand ($25,000) dollars in first mortgage bonds.   Motion carried.

"On motion adjourned, to meet at the call of the president."

It was also testified that a paper was "executed by the Gold Hill Mining Company for the purpose of correcting the form of the mortgage as originally executed."

The paper was introduced in evidence.   It was dated August 28, 1890, and recited that—

"Whereas, by a resolution of the board of directors of the Gold Hill Mining Company, duly passed and adopted on the twenty-fifth day of June, 1890, and in accordance with and in pursuance of said resolution, a mortgage was executed and de-

livered to G. Livingston Morse, as trustee for the use and purposes therein mentioned, on the first day of July, 1890, by the president and secretary of said company, they being authorized and directed in and by said resolution thus to do, and duly acknowledged by them, and the corporate seal of said company duly affixed to said mortgage by the like authority of said board of directors."

Certain mistakes were then stated to have been made in the morgage, and the secretary, Calvin Littlefield, was given authority to correct them, and he and the president were directed and authorized to execute a paper on behalf of the company and to affix the corporate seal of the company thereto. The paper was duly executed and recorded in Nevada County, California. Other facts are stated in the opinion.

*Mr. C. Walter Artz* for Williams.

*Mr. Curtis H. Lindsay* for Gaylord and others. *Mr. Henry Eickhoff* was on his brief.

MR. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

The Circuit Court and the Circuit Court of Appeals based their judgments upon the act of 1880 as construed by the Supreme Court of the State of California, regarding that construction as binding upon Federal tribunals. The conclusion is attacked by petitioner, and he urges the following propositions against it:

"I. The decision of the Supreme Court of California, to the effect that judgment creditors may take advantage of the act of 1880, is not binding upon the Federal courts either as constructive of that statute or determinative of a local rule of property.

"II. The act of 1880 does not apply to foreign corporations because the legislation of one State has no effect upon the powers and internal management of corporations organized in other States.

"III. Even if it should be held that the California statute (Statutes of 1880, p. 131) does apply to foreign corporations, the mortgage is valid, and a decree of foreclosure and sale should be directed."

(1) To sustain this proposition the petitioner makes a distinction between the construction of the statute and its application, conceding the binding force of the state decisions as to the former but denying their authority as to the latter. The contention enjoins a review of the decisions of the Supreme Court of the State.

In *McShane* v. *Carter*, 80 Cal. 310, the plaintiff claimed title to mining property and certain appurtenant water rights under two deeds from the Nevada Reservoir Ditch Company, a mining corporation. He brought suit to enjoin the sale of the property under a judgment obtained against the company by one of its creditors. Judgment passed for the plaintiff in the trial court, but was reversed by the Supreme Court of the State. The latter court, by Hayne, Commissioner, said—

"The important question arising on the appeal is, (p. 312) whether the evidence is sufficient to show that the plaintiff was the owner of the property which the sheriff was proceeding to sell, and this depends upon whether the directors of said mining companies had power or authority to convey the property in the absence of a ratification by the stockholders as specified in the act of 1880.

"1. We think that the provision of said act goes to the power or authority of the directors. It cannot be construed to relate merely to their personal liability, for no penalty is imposed upon them, and to so construe it would be to practically nullify the act. In our opinion, the directors of mining corporations have no power or authority to convey the mining ground without the consent of holders of two thirds of the stock, given as prescribed by the act. And it follows without such consent the title does not pass. And if this be so, the question can be raised by any one who connects himself with the title of the corporation which owned the property, as well as by the stockholders thereof.

"Nor can the consent of the stockholders be presumed from

the mere fact of the conveyance, whether under the corporate seal or not, for such consent or 'ratification' may be after the deed is executed, and hence is not necessarily or presumptively involved in the execution of such deed."

Counsel for petitioner says that the Supreme Court in its opinion not only construed but applied the act of 1880—construed it in that portion of the opinion which denied authority to directors of mining corporations to convey mining property without the consent of the stockholders; applied it in that portion of the opinion which declares that without the consent of the stockholders the title of mining property does not pass, and that "the question can be raised by any one who connects himself with the title of the corporation, . . . as well as by the stockholders thereof." This conclusion, it is asserted, is not warranted by the words of the statute, is opposed to the decisions of the courts of other States and of this court construing similar statutes, and is not binding upon the Federal courts. And it is urged that the Circuit Court of Appeals "failed to distinguish between a decision of the state court construing the terms outlining the effect of the statute as enacted and a decision declaring that certain other persons not mentioned or referred to in the statute may by reason of relations existing between them and the stockholders, under general principles of corporation law, become beneficiaries of the statute under consideration." And it is further urged "that a case of the latter class does not construe a statute or establish a local rule of property, but is merely a decision upon the general law of corporate relations."

We are unable to accept the distinction. To accept it would deprive the state courts of the power to declare the implications of state statutes, and confine interpretation to the mere letter. The Supreme Court of California declared the effect of the act of 1880 as deduced from the language and purpose of the act, and this was necessarily an exercise of construction. The very essence of construction is the extension of the meaning of a statute beyond its letter, and it can seldom be done without applying some principle of law general in some branch of jurisprudence, and if whenever such application occurs the authority

of the state courts to interpret the statute ceases, the Federal tribunals, instead of following, could lead those courts in declaring the meaning of the legislation of the States.

The construction of the act of 1880 was certainly directly presented to the Supreme Court of California, and that construction determined the judgment which was rendered. The court declared that the provisions of the act extended " to the power or authority of the directors," and that without the consent of holders of two thirds of the stock the title did not pass. In other words, the title remained in the corporation; the property remained the property of the corporation; and hence the deduction of the court, "the question can be raised by any one who connects himself with the title of the corporation which owned the property, as well as by the stockholders thereof." And this in consequence of the statute, and it is not the less so because the statutes of other States have been interpreted differently. It could hardly be contended that the legislature of California had not the authority to make such a consequence; and whether the legislature expressed its purpose or left it to inference, whether it expressed itself clearly or obscurely, the power of the state court to declare that purpose was none the less plenary.

*McShane* v. *Carter* was followed and affirmed in *Pekin Mining Co.* v. *Kennedy*, 81 Cal. 356; *Granite Gold Mining Co.* v. *Maginness*, 118 Cal. 131; *Johnson* v. *California Lustral Co.*, 127 Cal. 283; *Curtin* v. *Salmon River Co.*, 130 Cal. 345, 351.

(2) That the act of 1880 applies to foreign corporations was decided in *Pekin Mining Co.* v. *Kennedy*, 81 Cal. 356. That case, however, it is said, is practically overruled by *Miles* v. *Woodward*, 115 Cal. 308. Woodward was a stockholder in a mining corporation organized under the laws of the State of California. He brought an action against Miles, who was a director of the corporation, for $1000 damages for the violation of an act of the State, (Stats. 1880, p. 400,) which required the directors of the corporation to make or cause to be made, posted and filed, weekly reports of the superintendent.

" It is first contended," the court said, " that the act in question is unconstitutional for the reason that it operates only upon

domestic corporations, and thereby allows foreign corporations to transact business within this State upon more favorable conditions than are prescribed by law to similar corporations organized under the laws of this State, in violation of article XII, section 15, of the constitution."

This was denied, and the act was held constitutional as being properly confined to domestic corporations because it was " directed to the internal affairs of the corporation, and not to its outside dealings or to the conduct of its business."

As to the conduct of the business of foreign corporations, the court said the State could " exercise full powers of control," but over their organization and internal government the State had no such power, because " the laws of the State did not have extraterritorial force." And further the court said : " The law is designed to protect stockholders of domestic corporations, and to that end has declared that the directors of those corporations, the conduct of whose internal affairs is subject to the control of the legislature, shall do specific acts under a prescribed penalty for their failure and refusal."

The views expressed by the court were justified by the nature of the reports required to be made. They were of matters which alone concerned the stockholders—did not affect in any way the rights of others. To make such reports was not doing business ; it was only giving information of business done. But when a corporation sells or encumbers its property, incurs debts or gives securities, it does business, and a statute regulating such transactions does not regulate the internal affairs of the corporation. And it is certainly within the power of a State to say what remedies creditors of corporations shall have over property situated within the State. Therefore *Miles* v. *Woodward* is not an authority for petitioners' position.

(3) Even if it be held that the act of 1880 applies to foreign corporations, it is nevertheless contended that the mortgage is valid, and a decree of foreclosure and sale should be directed. In support of that position it is urged that (*a*) the meeting of June 25, 1890, at which the execution of the bonds and mortgage were resolved upon and authorized, though denominated a meeting of incorporators, was really a meeting of stockholders ;

(*b*) if this was not so, the corporation afterward, by its action of July 30, 1890, after the board of directors was organized, ratified the mortgage by the resolution which authorized its correction; (*c*) that not only those who participated in the meetings held more than two thirds of the stock of the corporation, but that the president, M. J. Shoecraft, at the time of the execution of the mortgage owned two thirds of the stock. In other words, it is urged, that the corporation either executed the mortgage or ratified it, and that the stockholders both authorized and concurred in its execution. The evidence of the facts involved in these claims is the minutes of the meetings set out in the statement of facts and of the following testimony of a witness (Calvin Littlefield) for complainant:

" Q. It appears that the following individuals were present at that meeting, namely: M. J. Shoecraft, Calvin Littlefield, G. Livingston Morse, R. H. Pettigrew, Jr., and W. W. Tucker. Can you tell me whether these gentlemen held all of the stock of the company at that time or not? A. They did.

\* . .\* \* \* \*. \* . \* \*

" Q. Do you know whether Mr. Shoecraft owned as much as two thirds of the stock of the company at the time when this mortgage was acknowledged? A. I do not.

\* \* .\* \* \* \* \* \*.

" Q. Have you the certificate book of the defendant company in your possession? A. I have.

" Q. Tell me, if you can, the amount of stock in the name of M. J. Shoecraft at the date when the mortgage was acknowledged, namely, July 24, 1890. A. One hundred and sixty thousand shares.

" Q. Shares at what value? A. Five dollars each. .

" Q. What was the entire capital of the company? A. Eight hundred thousand dollars—one hundred and sixty thousand shares.

" Q. Can you tell me what date this mortgage was acknowledged by the president and yourself? A. I think the date of the acknowledgment.

" Q. That is what? A. Twenty-fourth day of July, 1890.

" Q. Do you know why the mortgage was dated the 1st? A. Yes.

" Q. Can you say why? A. The arrangement with the owner—the first of July. By agreement the mortgage was to commence when the settlement ended."

Cross-examination :

" Q. You say that on the twenty-fourth day of July the whole number of shares were issued to M. J. Shoecraft? A. I do.

" Q. As appears by certificate No. I? A. Yes.

" Q. Certificate No. 1 (showing) is now before you? A. Yes.

" Q. Is that in a book? A. Yes.

" Q. What is it? A. The stock book.

\*   \*   \*   \*   \*   \*   \*   \*

" Q. Certificate No. 1 has never been taken out of the book? A. It has not.

" Q. It bears date the twenty-fourth day of July, 1890? A. It does.

\*   \*   \*   \*   \*   \*   \*   \*

" Q. Certificate No. 1, marked Exhibit ' C,' has never been separated from its stub? A. It has not.

" Q. And certificate No. 2 has never been separated from its stub? A. It has not.

" Q. All the other certificates about which you have testified, from No. 3 to No. 21, inclusive, have been separated from their stub at some time or other? A. Yes, sir."

The witness also testified that shares were issued in certain amounts which were named and to certain persons who were named, " from certificate No. 1." A number of certificates which the witness testified about were introduced in evidence. They all bore date of July 24, 1890.

But as to the effect of this testimony and of the contentions of petitioners we are not called upon to express an opinion. The statute of California prescribed the manner of ratification to be " either in writing signed and acknowledged by such stockholders or by resolution duly passed at a stockholders' meeting called for that purpose." This manner of ratification was held to be necessary as we have seen, in *McShane* v. *Carter, supra*, and that case has not been limited or varied by any subsequent case. And we have no doubt of the power of the

State to so prescribe, not only from its power over the manner of conveyance and the disposition of property situated within the State, but from its power over foreign corporations doing business within the State. *Clarke* v. *Clarke*, 178 U. S. 176; *Hooper* v. *California*, 155 U. S. 648. Nor can we contest that power though we might, if we were permitted to exercise an independent judgment, construe the statute as only illustrative and not as exhaustive of the manner of ratification.

*Judgment affirmed.*

MR. JUSTICE HARLAN concurred in the judgment.