In re HEFFRON CO.

(District Court, N. D. New York. September 8, 1914.)

No. 5408.

1. BANKRUPTCY (§ 228*)—FINDINGS OF REFEREE—REVIEW.

Findings of fact by a referee cannot be disturbed by the bankruptcy court, where they are accurate and supported by the evidence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.*]

2. CORPORATIONS (§ 656*)—GENERAL CORPORATION LAW—APPLICATION—MORTGAGES—CONSENT OF STOCKHOLDERS.

New York Stock Corporation Law (Consol. Laws, N. Y. c. 59) § 6, provides that every stock corporation shall have power to borrow money and mortgage its property, except that mortgages other than for purchase money, and mortgages authorized by contracts made prior to May 1, 1891, shall be consented to by the holders of not less than two-thirds of the capital stock of the corporation. General Corporation Law (Consol. Laws, N. Y. c. 22) § 20, declares that any foreign corporation doing business in New York may acquire and hold such real property in the state as may be necessary for its corporate purposes, and convey the

same by deed otherwise in the same manner as a domestic corporation. *Held,* that section 6 did not apply to a foreign corporation doing business in New York, and hence a mortgage of such corporation's New York real property, otherwise valid, was not rendered void because it was not authorized by the corporation's stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2578–2587; Dec. Dig. § 656.*]

**3.** COURTS (§ 366*)—FEDERAL COURTS—RULES OF DECISION OF STATE COURTS —CONSTRUCTION OF STATUTES.

A decision of the highest court of a state construing a state statute is binding on the federal courts sitting within such state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*]

**4.** CORPORATIONS (§ 656*)—MORTGAGES—VALIDITY—DOING BUSINESS WITHIN STATE—CONSENT OF SECRETARY OF STATE.

That a foreign corporation doing business in New York did not obtain the consent of the Secretary of State, as required by General Corporation Law (Consol. Laws. N. Y. c. 22) § 15, providing that a failure to do so shall preclude a corporation from maintaining any action on its contracts, did not invalidate a mortgage executed by the corporation on its property located in New York.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2578–2587; Dec. Dig. § 656.*]

**5.** BANKRUPTCY (§ 346*)—CORPORATIONS—TAXATION.

A trustee of a bankrupt corporation is not concluded by an assessment of franchise and license taxes by the comptroller of the state, but the amount and legality of taxes so assessed is determinable by the bankruptcy court as provided by Bankr. Law, § 64a (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 535; Dec. Dig. § 346.*]

**6.** JUDGMENT (§ 490*)—LIEN—SUSPENSION—VACATION OF ORDER.

Where the lien of a judgment has been suspended as authorized by Code Civ. Proc. N. Y. § 1259, but the proceeding is defective, or the order has not been properly obtained on proper notice, it cannot, for that reason, be regarded as void in bankruptcy proceedings against the judgment debtor, but application should be made to the court granting the order to vacate it.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 926–928; Dec. Dig. § 490.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Heffron Company. Motion for confirmation of report of a special master, to whom certain questions were referred, the main one being the validity of a mortgage of $50,000 on the real estate of the Heffron Company, a corporation of the state of Maine, situated in the city of Syracuse, N. Y., and which mortgage was made and executed by said corporation for a good and full consideration on or about June 26, 1913, and duly recorded, but which was so made and executed without having obtained the consent of the stockholders of such corporation thereto, and without having procured from the Secretary of the State of New York the certificate required by section 15 of the General Corporation Law of the state of New York, to the effect that such corporation had complied with the requirements of law authorizing it to do business in the state of New York. Certain questions as to taxes al-

leged to be due the state of New York and the city of Syracuse are also involved to some extent, as well as a question of usury and the validity of certain judgments. Confirmed.

Costello, Burden, Cooney & Walters, of Syracuse, N. Y., for trustee.

Tracy, Chapman & Tracy, of Syracuse, N. Y., for Daniel F. Tolman, mortgagee.

Jas. J. Barrett, of Syracuse, N. Y., for State of New York.

C. G. Baldwin, of Syracuse, N. Y., for United States Fidelity & Guaranty Co. and others.

Herbert Robinson, of Syracuse, N. Y., for Heffron Co.

Frank Hopkins, of Syracuse, N. Y., for City of Syracuse.

Benj. Stolz, of Syracuse, N. Y., for general creditors.

RAY, District Judge (after stating the facts as above). The special master has found certain facts, viz.:

"First. The Heffron Company is a foreign corporation, incorporated under the laws of the state of Maine, December 27, 1907. It immediately began doing business within the state of New York and continued so to do until the filing of the petition in bankruptcy. During all of such time, its business has been carried on within the state of New York. On December 8, 1913, a petition in bankruptcy, involuntary in form, was presented to the court, on which date Frank B. Hodges was appointed receiver, and Mr. Hodges was appointed trustee of the bankrupt on the 14th day of April, 1914. The bankrupt was insolvent for at least four months immediately prior to the filing of the petition in bankruptcy.

"Second. On June 26, 1913, and for some time prior thereto, the Heffron Company was the owner of certain real estate in the city of Syracuse, described as follows. * * *

"On the last-mentioned date, this property was incumbered by two mortgages; one amounting to $16,400, held by the Syracuse Savings Bank, and another amounting to $20,000, held by Clifford E. Lipe. On said date, it executed and delivered to Daniel H. Tolman its bond, secured by a mortgage covering the property above described in the sum of $50,000, which mortgage bore interest at the rate of 6 per cent. and which was recorded in the Onondaga county clerk's office June 28, 1913, in Book 462 of Mortgages, at page 406. This mortgage was executed pursuant to a resolution of the board of directors, but no consent to the execution of such mortgage was ever given by the stockholders. No consent of the stockholders had been given to the execution of the mortgage to Clifford E. Lipe above referred to. The Heffron Company had never procured from the Secretary of State the certificate prescribed by section 15 of the General Corporation Law of the state of New York, to the effect that it had complied with the requirements of law authorizing it to do business within this state.

"Third. At or prior to the execution of the bond and mortgage to Daniel H. Tolman and as a part of the same transaction, the Heffron Company and Daniel H. Tolman entered into an agreement in writing (Exhibit 10) which, in effect, secured to Tolman, in addition to the interest specified in the bond and mortgage, a commission of 1½ per cent. on the gross monthly sales of the Heffron Company, and subsequently there was paid to Tolman by the Heffron Company $424.67 to apply upon such commissions.

"Fourth. From the proceeds of the loan of $50,000 received from Daniel H. Tolman, the Heffron Company paid the bonds and mortgages held by the Syracuse Savings Bank and Clifford E. Lipe, respectively. It also paid the claims of certain creditors, aggregating $1,995, attorney and recording fees of $255, and the balance was retained by it. Interest was paid on the mortgage down to August 30, 1913.

"Fifth. The Heffron Company never paid to the state treasurer of the state of New York the license tax or fee imposed on foreign corporations by sec-

tion 181 of the Tax Law [Consol. Laws, N. Y. c. 60], nor did it ever pay the annual franchise tax imposed by section 182 of the Tax Law of the state of New York.

"Sixth. On April 15, 1913, it filed with the state comptroller of the state of New York, a report (Exhibit 1) on a blank form prepared by the comptroller and executed by its secretary and treasurer, showing, among other things, the date and place of its corporation, the date when it began business in the state of New York, the amount of its capital stock, the dividends paid since its incorporation, the nature of its business and the percentage of its capital stock employed in the state of New York during the year ending October 31, 1912, in manufacturing and in the sale of the product of such manufacture. This report shows the company to have been a manufacturing corporation, that its total capital stock was $1,000,000, and that the percentage of its capital, used in this state during the year mentioned in manufacturing, to have been 60 per cent. Upon this report, and without any other evidence or outside information, the comptroller on the 18th day of April, 1913, fixed a license tax under section 181 of the Tax Law of $1,250, and a franchise tax under section 182 of the Tax Law for the years 1908 to 1912, inclusive, which with accrued penalties now amounts to $2,196.34. In arriving at the tax imposed by section 182 of the Tax Law, the comptroller ignored the claim of the Heffron Company, as shown by the report filed, tending to show that it was a manufacturing corporation, as well as its claim that 60 per cent. of its capital was employed in the state of New York during the year 1912 in manufacturing, and the amount of the tax imposed under section 182 was the tax properly imposed on a nonmanufacturing corporation without any exemption to which it was entitled under section 183 of the Tax Law if it were a manufacturing corporation employing, at least, 40 per cent. of its capital stock in manufacturing in this state.

"Seventh. On the 20th day of May, 1913, there was docketed in the Onondaga county clerk's office a judgment against the Heffron Company and in favor of David Chezensky and Louis Alpern in the sum of $2,146.20. Thereafter the Heffron Company took an appeal from said judgment to the Appellate Division, First Department, and an undertaking on appeal in the sum of $2,500 was executed by the United States Fidelity & Guaranty Company. The United States Fidelity & Guaranty Company was indemnified by the personal bond of Messrs. Stansfield and Loop, officers of the Heffron Company. On the 14th day of June, 1913, the attorney for the judgment creditors Chezensky and Alpern, and the attorney for the Heffron Company entered into a written stipulation to the effect that the lien of said judgment upon any real estate or property of the Heffron Company should be suspended during the appeal, and that an order to this effect might be entered in the clerk's office of Onondaga county. Pursuant to this stipulation and on application of counsel for the Heffron Company, the Special Term of the Supreme Court did, on the 23d day of June, 1913, grant an order exempting the real property of the Heffron Company from the lien of said judgment as against judgment creditors, purchasers, and mortgagees in good faith, and directing the clerk of Onondaga county to note on the docket of said judgment that the lien thereof was suspended on appeal pursuant to the terms of said order. This order was entered in the clerk's office of Onondaga county on June 23, 1913, and the clerk complied with the terms of its direction to him. The stipulation entered into between the attorneys for the respective parties to the action, the granting of the order of the Special Term, and the action of the clerk in noting on his docket the suspension of the lien, were all without notice to the United States Fidelity & Guaranty Company, although section 1256 of the Code of Civil Procedure provides that such an order may be made only upon notice to the attorney for the respondent and to the sureties in the undertaking. The appeal to the Appellate Division terminated on the 27th day of December, 1913, by an affirmance of the judgment. 144 N. Y. Supp. 1103. An appeal was thereafter taken by the Heffron Company to the Court of Appeals, and on the 29th day of December, 1913, the United States Fidelity & Guaranty Company executed an undertaking on appeal to the Court of Appeals. The appeal to the Court of Appeals was dismissed on the 4th day of June, 1914. The order of the Special Term granted June 23, 1913, has never been

vacated, nor has the lien of the judgment as suspended by said order ever been restored by an order of the Supreme Court of the State of New York.

"Eighth. The city of Syracuse on the 15th day of September, 1913, levied an assessment against the Heffron Company for the year 1913, which, together with fees and penalties, now amounts to the sum of $1,119.52, no part of which has been paid.

"Ninth. The county of Onondaga on the 15th day of December, 1913, levied an assessment against the Heffron Company for the year 1913, which, together with fees and penalties, now amounts to the sum of $426.57, no part of which has been paid."

[1] These findings of fact cannot be disturbed, as they are accurate and fully supported by the evidence. As to certain judgments, the special master finds that one has been paid, that another has been paid, except $70, and that the others were obtained within four months of the filing of the petition and are not liens. He then finds as conclusions of law:

"First. That the mortgage of Daniel H. Tolman described in the second finding of fact is valid and is a lien upon the property described therein for $50,000 and interest from August 30, 1913.

"Second. That the contract of June 19, 1913 (Exhibit 10) is so related to the said mortgage and the bond accompanying the same that interest in excess of 6 per cent. per annum was thereby taken upon the loan secured by the mortgage.

"Third. That by reason of the provisions of section 374 of the General Business Law of the state of New York, the Heffron Company and the trustee in bankruptcy are precluded from interposing usury as a defense, and the mortgage in question is not invalid on account of usury.

"Fourth. That the provisions of section 6 of the Stock Corporation Law of the state of New York, requiring the consent of not less than two-thirds of the capital stock to a mortgage, does not extend to a foreign corporation, and therefore the failure to have such consent to the mortgage of Daniel H. Tolman does not render the same void.

"Fifth. That the failure of the Heffron Company to procure from the Secretary of State a certificate to do business as prescribed by section 15 of the General Corporation Law does not render the said mortgage void.

"Sixth. That the state of New York has a valid lien against the property of the bankrupt for taxes amounting to $2,128.54; the same being $1,250 license tax assessed under section 181 of the Tax Law of the state of New York and $878.54, being 40 per cent. of the amount of the franchise tax assessed under section 182 of the Tax Law of the state of New York for the years 1908 to 1911, inclusive. That the balance or 60 per cent. of the franchise tax assessed under section 182 of the Tax Law of the state of New York was wrongfully assessed, and is invalid for the reason that during the years for which said tax was assessed the Heffron Company was a foreign corporation engaged in manufacturing and employing 60 per cent. of its capital in the state of New York in manufacturing, and to this extent of its capital was exempt from franchise tax under the provisions of section 183 of the Tax Law of the state of New York.

"Seventh. That David Chezensky and Louis Alpern, judgment creditors, and the United States Fidelity & Guaranty Company, surety upon the undertaking given upon an appeal from the judgment of said Chezensky and Alpern, are not entitled to have the lien of said judgment restored nunc pro tunc as of June 23, 1913, the date upon which the lien of said judgment was suspended by an order of the Supreme Court.

"Eighth. That the city of Syracuse has a valid lien against the property of the bankrupt for taxes amounting to $1,119.52.

"Ninth. That the county of Onondaga has a valid lien against the property of the bankrupt for taxes amounting to $426.57.

"Tenth. That the judgment recovered in favor of Harold P. Hall against the bankrupt, which is described in the tenth finding of fact, having been

paid, is not a lien on the property of the bankrupt, and should be vacated and discharged of record.

"Eleventh. That the judgment recovered in favor of Charles S. Baxter against the bankrupt, which is described in the tenth finding of fact, having been paid with the exception of $70, is a valid lien against the property of the bankrupt to the extent of $70 with interest from July 13, 1913, only.

"Twelfth. All of the other judgments recovered against the bankrupt, which are described in the tenth finding of fact, were recovered within four months prior to December 8, 1913, the date of the filing of the petition in bankruptcy, and were recovered during the insolvency of the bankrupt and are void, and each of said judgments should be vacated and discharged of record.

"Thirteenth. That the valid liens against the property of the bankrupt in the order of their priority and the amount of each, are as follows:

| | |
|---|---:|
| State of New York, tax | $ 2,128.54 |
| City of Syracuse, tax | 1,119.52 |
| County of Onondaga, tax | 426.57 |
| Daniel H. Tolman, mortgage | 52,525.00 |
| Charles S. Baxter, judgment | 74.13" |

[2] The General Corporation Law of the state of New York (section 20) provides that:

"Any foreign corporation * * * doing business in this state, * * * may acquire such real property in this state as may be necessary for its corporate purposes and the transaction of its business in this state, and convey the same by deed *or otherwise in the same manner as a domestic corporation.*"

That a mortgage, such as this Tolman mortgage is, is a conveyance within the meaning of this statute cannot, in view of the decisions, be successfully questioned. That the state of New York, through its law-making power, may prescribe the mode and manner in which a foreign corporation doing business in this state shall convey by deed or mortgage its real property situate within the state, and prescribe the preliminary action, if any, to be taken by such corporation through its directors and stockholders before executing such a mortgage or the subsequent action to be taken by them, if any, in order to validate it, cannot, in view of many decisions be questioned. Williams v. Gaylord, 186 U. S. 157, 168, 22 Sup. Ct. 798, 46 L. Ed. 1102, and cases cited. The state may say that if a foreign corporation comes into this state and purchases and owns property it shall not incumber or mortgage it except with the prior consent or on the subsequent ratification of its stockholders. The question is, Has it done so? The answer to this question depends on whether or not the following clauses of section 6 of the Stock Corporation Law of the state of New York applies to foreign corporations, viz.:

"In addition to the powers conferred by the General Corporation Law, *every stock corporation* shall have the power to borrow money * * * and it may issue and dispose of its obligations for any amount so borrowed, and *may mortgage its property* and franchises to secure the payment of such obligations, or of any debt contracted for said purposes. *Every such mortgage,* except purchase-money mortgages and mortgages authorized by contracts made prior to May 1, 1891, *shall be consented to by the holders of not less than two-thirds of the capital stock of the corporation*" which consent, etc.

If this provision does apply to mortgages given by a foreign corporation doing business in the state of New York on its real property situated in such state, the mortgage in question is void.

On this subject the learned special master says:

"The provision of the Stock Corporation Law, requiring mortgages to be consented to by two-thirds of the stockholders, does not, in my judgment, extend to foreign corporations. The statute should not be construed so as to defeat an obligation of a foreign corporation unless it is clear that the Legislature intended the act to apply to such corporations. The provision of the statute is primarily for the protection of stockholders. No such protection appears in the corporation law of the state of Maine. From an examination of the statute in question, and its history, commencing with chapter 40 of the Laws of 1848, it seems to me that the intention of the Legislature has been to limit its application to domestic corporations. The question is not entirely free from doubt (Williams v. Gold Hill Min. Co. [C. C.] 96 Fed. 454; Williams v. Gaylord, 186. U. S. 157, 22 Sup. Ct. 798, 46 L. Ed. 1102), but I think the language of the Constitution and statute of California which were involved in the determination of that case, indicate an intention to cover corporations organized without the state but doing business therein. The weight of authority, I believe, is in favor of limiting the application of the New York statute to domestic corporations. Vanderpoel v. Gorman, 140 N. Y. 563, 35 N. E. 932, 24 L. R. A. 548, 37 Am. St. Rep. 601; Matter of Prime, 136 N. Y. 347, 32 N. E. 1091, 18 L. R. A. 713; Standard Nat'l Bank v. Garfield Nat'l Bank, 56 App. Div. 43, 67 N. Y. Supp. 472; Ernst v. Rutherford Gas Co., 38 App. Div. 388, 56 N. Y. Supp. 403; Saltmarsh v. Spaulding, 147 Mass. 224, 17 N. E. 316."

Since the special master rendered his decision in this case (July 3, 1914), the Court of Appeals of this state has handed down its decision in Muck v. Hitchcock et al., 212 N. Y. 283, 106 N. E. 75, which confirms the above interpretation or construction put on the Stock Corporation Law and General Corporation Law. Section 21 of the General Corporation Law of the state of New York provides that:

"Any foreign corporation * * * may take by devise any real property situated within this state * * * and convey it by deed or otherwise *in the same manner* as a domestic corporation."

In the Muck Case the American Millennial Association, a religious corporation of the state of Massachusetts, and owning certain lands in the state of New York, contracted to convey same to Elvira E. Muck for $600. She paid $50 of the purchase money and later tendered the balance, but the association refused the tender and refused to return the $50 paid. Later one Welch contracted for the purchase of the land with the association and assigned his contract to Hitchcock. Proceedings were had in the county court pursuant to statute for liberty to convey, and Hitchcock received his deed and went into possession. Muck brought action for specific performance, but relief was denied on the ground that permission to enter into the contract with her for a conveyance of the land had not been obtained of the court. Section 12 of the Religious Corporation Law of the state of New York (Consol. Laws, c. 51) provides:

"A religious corporation shall not sell or mortgage any of its real property without applying for and obtaining leave of the court therefor pursuant to the provisions of the Code of Civil Procedure," etc.

This provision had not been complied with, but the Court of Appeals held that the statute quoted (section 12 of the Religious Corporation Law) does not apply to foreign corporations. The court also quoted and construed section 21 of the General Corporation Law, and per Cuddeback, J., Chase, Collin, Hogan, Miller, and Cardozo, JJ., concurring, Willard Bartlett, C. J., concurring in result, said:

" 'A religious corporation shall not sell or mortgage any of its real property without applying for and obtaining leave of the court therefor pursuant to the provisions of the Code of Civil Procedure,' etc. It has been held that broad words in a statute conferring powers and privileges on 'a corporation,' or on 'any corporation,' apply only to corporations organized under the laws of this state. The Legislature in such cases is dealing with its own creations, whose rights and obligations it may limit, define, and control.' Matter of Balleis, 144 N. Y. 132, 133, 38 N. E. 1007; White v. Howard, 46 N. Y. 144, 165; Colquhoun v. Heddon, L. R. (25 Q. B. D.) 129; Saltmarsh v. Spaulding, 147 Mass. 224, 17 N. E. 316; United States v. Fox, 94 U. S. 315, 24 L. Ed. 192; Alfred University v. Hancock, 69 N. J. Eq. 470, 46 Atl. 178; Vanderpoel v. Gorman, 140 N. Y. 563, 35 N. E. 932, 24 L R. A. 548, 37 Am. St. Rep. 601.

"In my opinion the words of section 12 of the Religious Corporations Law should be limited in like manner to domestic corporations. The object of the state in requiring a religious corporation to obtain leave of the court before conveying its real property is to protect the society and its members from loss through unwise bargains, and to prevent perversion of the association's property. The state owes no service of that kind to foreign corporations. Indeed, it would be impracticable for the courts of this state to exercise such visitorial power over a foreign corporation. Our courts do not know the needs of the foreign association, and they cannot determine with any satisfaction, as the statute requires (General Corporation Law [Consol. Laws, c. 23] § 73), whether the interests of the association will be promoted by the sale of its land in this state or not, nor can they, with any satisfaction, direct what disposition shall be made of the proceeds of sale. Furthermore, after the sale, the courts of this state would, in most cases, lose jurisdiction of the foreign corporation and its property. The power of visitation over foreign corporations can be exercised effectually only by the courts of the association's domicile. For these reasons, I think it should be said that the law of this state, prohibiting religious corporations from selling their real property without leave of the court, does not extend to foreign corporations.

"It is, however, argued on behalf of the defendants that under section 21 of the General Corporation Law, the Millennial Association could not convey its land without leave of the court. Section 21 reads thus: 'Section 21. Any foreign corporation * * * may take by devise any real property situated within the state and hold the same for not exceeding five years * * * from the time when the right to the possession thereof vests in such devisee, and convey it by deed or otherwise in the same manner as a domestic corporation.' The defendants rely upon the final words of this section, which read thus: 'And convey it by deed or otherwise in the same manner as a domestic corporation.' The argument is that this clause requires a foreign religious corporation to obtain permission of the court before conveying its real property in this state the same as a domestic corporation. Section 21 includes all classes of foreign corporations, and is not confined to those formed for religious or similar purposes. The statutes of this state prescribe certain solemnities which shall attend the transfer of title to real property, and it was those solemnities and nothing more that the Legislature had in mind. Saltmarsh v. Spaulding, supra; Hosford v. Nichols, 1 Paige, 220, 226."

[3] This decision, so far as the construction of statutes is concerned, is binding on this court and, I think, disposes of the question of the validity of this mortgage. The final words of sections 20 and 21 are the same, and must have the same interpretation. The contrary view has been very ably presented by the learned attorney for the trustee. but I deem the question foreclosed by the Muck Case.

[4] This court agrees with the special master that the failure of the Heffron Company to obtain the consent of the Secretary of State to do business in the state of New York, as required by section 15 of the General Corporation Law, should not be held to invalidate the mortgage. That statute itself prescribes the penalty for such failure, which

is that such corporation cannot maintain an action on its contracts. As the special master says:

"It would be unreasonable to place a premium upon the omission of a delinquent corporation and thereby absolve it from liability to others upon its contracts."

[5] As to the taxes assessed by the state of New York the special master says:

"I think the trustee is not bound by the determination of the comptroller in fixing the tax, nor limited to a review of that determination by certiorari. While ordinarily relief must be secured through certiorari, if at all, an exception in favor of a trustee in bankruptcy is created by section 64a of the Bankruptcy Act. Matter of Selwyn Importing Co., 18 Am. Bankr. Rep. 190; State of New Jersey v. Anderson, 17 Am. Bankr. Rep. 63, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284.

"The license fee assessed under section 181 of the Tax Law is, I think, a valid lien even though the Heffron Company never applied for or received a certificate to do business under section 15 of the General Corporation Law. As a matter of fact, it did do business in this state within the meaning of the statute and for several years enjoyed this privilege. I believe the intention of the law to be that the state may levy this tax against a foreign corporation at any time upon learning that the corporation is doing business in this state, and is not restricted to a time when the corporation may ask for the certificate.

"The report upon which the franchise tax for the years 1908 to 1911, inclusive, is based, clearly showed that the Heffron Company was a manufacturing corporation. It also showed that 60 per cent. of its capital was employed in manufacturing in the state of New York during the year ending October 31, 1912. The printed blank furnished by the comptroller limited that particular inquiry to the period mentioned. No other investigation was made by the officer fixing the amount of the tax to ascertain any fact upon which to base his determination. A fair and reasonable construction to be placed upon the entire report would be that the same percentage of capital was employed during the entire period covered by the report. At any rate, the report shows that the company was a manufacturing corporation during all that period, and there was no reason shown for the taxing officer ignoring this fact entirely and taxing the company as a nonmanufacturing corporation. The report does not show that any capital was employed outside of New York. The entire franchise tax assessed is not invalid, but I think it should be reduced as set forth in the sixth conclusion of law."

The amount and legality is to be determined by the bankruptcy court, not the state court. Section 64a, Bankruptcy Law. In State of New Jersey v. Anderson, Trustee, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284, it was held:

"A state creating a corporation may fix the terms of its existence and provide that for the continued existence of its franchise it must yearly pay the state certain sums fixed by the amount of its outstanding stock. While the state court may construe a statute and define its meaning, it cannot conclusively determine that which is not a tax to be a tax within the meaning of a federal statute; that is a federal question of ultimate decision in this court."

[6] As to the Chezensky and Alpern judgment, the lien, if suspended, was suspended pursuant to section 1256 of the Code of Civil Procedure (N. Y.), and can be restored only as prescribed by section 1259, which provides what is to be done and then says:

"The lien of the judgment is thereupon restored, for the unexpired period thereof, as if the order had not been made, but with like effect only, as against judgment creditors, purchasers, and mortgagees in good faith, as if the judgment had then been first docketed."

If the lien of this judgment was properly suspended on due notice, section 1259 controls, but if the proceeding was defective or the order suspending the lien was not properly obtained on proper notice, a motion should be made in the same court where granted for an order vacating such order suspending the lien on appeal. I do not think this court can or should ignore that order, or treat it as a nullity. Clearly it cannot set it aside or vacate it. The parties may make such motion or application in the state courts in respect thereto as they may be advised, and there will be an order to that effect.

The report of the special master is confirmed, and there will be an order or orders to that effect and in accordance therewith, and also allowing an application in the state court as to this judgment last referred to.

So ordered.