## BOSTON ACME MINES DEVELOPMENT CO. v. CLAWSON.

No. 4262.     Decided September 12, 1925.     (240 P. 105.)

1.  CORPORATIONS—CONTENTION THAT MINING MACHINERY SOLD WAS INSUFFICIENTLY DESCRIBED IN DEED, WITHOUT MERIT, WHERE OFFER AND ACCEPTANCE OPERATED AS IMMEDIATE TRANSFER OF COMPLETE TITLE. In suit involving ownership of mining machinery, contention that property, sold by one mining company to subsidiary mining company, was not sufficiently described in deed to give notice to subsequent judgment creditor and purchaser at execution sale, *held* without merit; offer and acceptance of themselves operating as complete transfer of title without necessity of deed, in view of Comp. Laws 1917, §§ 5127, 5157.

2.  CORPORATIONS—CONTENTION THAT SALE OF MACHINERY TO SUBSIDIARY COMPANY WAS VOID BECAUSE NO CHANGE OF POSSESSION WITHOUT MERIT, WHERE IT WAS NOT ALLEGED TO BE FRAUDULENT ON CREDITORS. Contention of defendant that sale of mining property by mining company to subsidiary company was void, because of no change of possession, in view of Comp. Laws 1917, § 5135, *held* without merit, where it was not alleged sale was in fraud of creditors, and it did not appear defendant at time of sale had standing as creditor.[1]

---

[1] *Wilson* v. *Sullivan*, 17 Utah, 341, 53 P. 994.

3. CORPORATIONS—FAILURE TO PASS RESOLUTION AUTHORIZING SALE OF COMPANY'S MACHINERY COULD BE AVAILED OF ONLY BY STOCK-HOLDERS AND CORPORATION. That one mining company sold machinery to a subsidiary company, without resolution of board of directors authorizing such sale, was a fact that could only be availed of by corporation and stockholders of company, and no one else, in view of Comp. Laws 1917, § 869.

4. CORPORATIONS—CONTRACT OF SALE BETWEEN CORPORATIONS HAV-ING COMMON DIRECTORSHIP HELD NOT VOID, WHERE THERE WAS NO BAD FAITH DISCLOSED. Where mining company made sale of mining machinery to subsidiary corporation, both companies having common directorship, held such sale was not void; it not being shown that it was made in bad faith.

5. CORPORATIONS—FACT ABSENT DIRECTOR NOT NOTIFIED OF MEETING WHEREIN SALE OF PROPERTY CONSIDERED CANNOT BE AVAILED OF BY THIRD PARTY NOT CONNECTED WITH TITLE OF CORPORATION OWNING PROPERTY. The fact that absent directors of mining company were not notified of meeting wherein sale of mining machinery to subsidiary company was authorized cannot be availed of by a third party, not connected with title of corporation which owned property, to declare such sale void, in view of Comp. Laws 1917, § 869.

6. CORPORATIONS—FINDING THAT, AT TIME OF SALE OF PROPERTY TO SUBSIDIARY COMPANY, PARENT COMPANY WAS INDEBTED TO PAR-TIES THROUGH WHOM DEFENDANT CLAIMED TITLE, HELD AGAINST PREPONDERANCE OF EVIDENCE. In suit wherein ownership of min-ing machinery was involved, and wherein defendant claimed sale by parent mining company to plaintiff subsidiary company was void, held a finding of court that, at time of sale of prop-erty in question to subsidiary company, parent company was indebted to parties through whom defendant claimed title by reason of purchase of judgment, was against preponderance of evidence.

7. CORPORATIONS—SERVICE OF PROCESS ON AGENT MUST BE MADE IN MANNER PROVIDED IN STATUTE. Service on agent of foreign corporation must be made in manner provided for in Comp. Laws 1917, § 6548, subd. 5.[2]

8. JUDGMENT—MORE LATITUDE ALLOWED ON DIRECT ATTACK UPON JUDGMENT, BECAUSE OF INSUFFICIENCY OF PROCESS, THAN ON COL-LATERAL ATTACK. More latitude is allowed on a direct attack

---

[2] *Honerine Min. & M. Co.* v. *Pipe & Tank Co.*, 31 Utah, 326, 88 P. 9.

on a judgment, for insufficiency of service of process, than on a collateral attack, and in former case extrinsic as well as record evidence may be resorted to.

9. CORPORATIONS—RETURN MUST SHOW SERVICE COULD NOT BE MADE UPON OFFICER OF SUPERIOR CLASS BEFORE SERVICE MADE UPON OFFICER OF INFERIOR CLASS, AND SHOULD SHOW PERSON SERVED CAME WITHIN LATTER CLASS. Under Comp. Laws. 1917, § 6548, subd. 5, providing for service of process upon officers of corporation, return of officer making service of process should show that service could not be made upon officers or persons in superior class named by statute, and, if not made upon some one in that class, return should show by proper description that person served came within inferior class.

10. CORPORATIONS—JUDGMENT—SERVICE MADE ON AGENT PERSONALLY INTERESTED IN SUIT AS ADVERSARY VOID, AND JUDGMENT MAY BE COLLATERALLY ATTACKED. Service of process, made under Comp. Laws 1917, § 6548, subd. 5, on an agent of a corporation who was beneficially interested in suit as an adversary against corporation, was void, and was subject to collateral attack in case where it appeared from face of record that such service was not made in compliance with statute.[3]

Appeal from District Court, Third District, Salt Lake County; *W. S. Marks,* Judge.

Suit by the Boston Acme Mines Development Company against Moroni Clawson. From a judgment for defendant, plaintiff appeals.

REVERSED AND REMANDED, with instructions.

*P. G. Ellis,* of Salt Lake City, for appellant.

*P. C. Evans,* of Salt Lake City, for respondent.

THURMAN, J.

This is an appeal by plaintiff from a judgment against it in favor of defendant, in a case involving a controversy

---

[3] *Olson* v. *Wall,* 58 Utah, 20, 196 P. 1014; *Amy* v. *Amy,* 12 Utah, 278, 42 P. 1121; *Hoaglund* v. *Hoaglund,* 19 Utah, 103, 57 P. 20.

concerning the ownership of certain mining machinery and equipment situated on the premises of defendant in the town of Morgan, Morgan county, Utah. Plaintiff claims title under an alleged purchase from the Boston Acme Mines Company, a Delaware corporation, executed in May, 1919. The defendant claims under an alleged judgment against said company in favor of one Hattie Tavener, rendered in June, 1921. It is alleged in the answer that the judgment was assigned to defendant for a valuable consideration in December of the same year, after the first execution had been issued upon the judgment, and that defendant purchased the property under an alias execution sale in October, 1924.

This is an equitable proceeding to determine the ownership of the property and to restrain a threatened sale thereof and for other equitable relief.

The case, as tried below, both as to the issues raised by the answer and the conduct of the trial, took a wide range, because of which the record is incumbered with much irrelevant and immaterial matter. The findings of the court are subject to the same criticism; thus casting upon this court the burden of shifting and weeding out the superfluous matter in order to ascertain the precise questions to be determined. We shall not attempt to follow counsel in their peregrinations as far as the irrelevant and immaterial issues are concerned.

Before stating what we understand to be the controlling questions, it is necessary to make a brief statement of matters essential to a determination of the questions involved.

The Boston Acme Mines Company, hereinafter called the Boston company, from which both plaintiff and defendant deraign title, acquired title to the property in question some time prior to the month of May, 1919. It had stock interests in mining property in Morgan county, and the mining machinery and equipment in controversy was used or to be used in the development of said property. In the summer of 1918 the company employed one M. K. Tavener to come to Utah to see that certain moneys it was advancing to mining companies in which it had an interest were be-

ing properly expended in the development of the properties. He was a director and stockholder in the company, and it does not appear from the record that there was any friction between him and the company prior to the beginning of 1921. Quite a large amount of money was raised in the East by the company on sales of its stock, and much of it was forwarded to Tavener to be expended for the purposes hereinbefore stated. His wife kept his books of account with the company, showing the money received and how expended. He applied to his own use sufficient to defray hotel expenses for himself, his wife, and her mother, which amounts the company conceded it had agreed to pay.

Early in 1919 the plaintiff company was organized as an Arizona corporation, under the name of the Boston Acme Mines Development Company. The plaintiff appears to have been organized as a subsidiary company of the Boston company; the purpose being to transfer to plaintiff all of the Utah holdings of the Boston company. The directors of plaintiff company were three in number, all of whom were likewise directors of the Boston company. It appears from the minutes kept by plaintiff company that on May 12, 1919, at Baltimore, Md., the company held its first meeting with two directors present, which constituted a quorum. After organizing, by the election of a president, vice president, secretary, and treasurer, the company proceeded to consider an offer, dated May 7, 1919, made by the Boston company to sell all its interest in certain mining property in Morgan county, including mining machinery theretofore used in connection with said mining properties, together with any and all its capital stock in said mining companies, for 10,000 shares of the plaintiff company's capital stock of the par value of $1 per share. The 10,000 shares was the entire capitalization of the plaintiff company. By resolution, the offer of the Boston company was accepted, and scrip issued and delivered to the Boston company, which scrip constituted an order for delivery of the stock on presentation. It also appears that the Boston company was informed that its offer of sale had been accepted. A deed evidencing the transfer was also presented, accepted

by the plaintiff company, and direction given that it be forthwith recorded in the office of the proper public official. The deed, in substance, purports to convey all of the rights, title, and interest of the Boston company in certain mining claims, mines, and material in Morgan county, and their equipment in said county.

Such, in substance, were the proceedings of the plaintiff and Boston company in respect to the property in question, as appears from the minutes of the plaintiff company of May 12, 1919. This, together with subsequent proceedings relating to the property, constitutes the transfer of the property from the Boston company to the plaintiff upon which plaintiff relies. The validity of the transfer is challenged by defendant, and is the principal question for determination on this appeal.

There is some controversy between the parties as to whether the plaintiff company took over the business of the Boston company thereafter, or whether the latter company continued to carry on the business. The evidence quite clearly shows that checks of the Boston company were periodically forwarded to Tavener for the payment of expenses incident to the development of the properties during the years 1919 and 1920 down to the month of December of that year. It also satisfactorily appears that during 1920 Tavener located for the plaintiff company numerous mining claims in Morgan county. In December, 1920, the Boston company ceased remitting money to Tavener, and in March following it appears his employment was suspended altogether, but he still retained the office of director. No remittances were sent to Tavener after December, 1920. At the time of his suspension, it appears that he was in arrears for hotel expenses for himself and wife to the defendant, Clawson, as hotel keeper for the months of January, February, and March, 1921. Mrs. Tavener's mother had died in the latter part of 1919. The usual remittances had not been received from either the Boston company or the plaintiff. Considerable correspondence was carried on during this period between the Taveners and the witness Klem, a common director in both plaintiff and the Boston com-

pany. As we view the case, the correspondence is not material, and we only refer to it as leading up to a material issue.

In June, 1921, Mrs. Tavener instituted an action against the Boston company for the sum of $5,569.44, $1,600 of which was alleged by her to be money belonging to her which the defendant in that case had wrongfully converted to its own use. The remainder of the amount sued for was alleged by her to be money which was owing to M. K. Tavener for money advanced to said defendant upon its request, and for unpaid salary at $50 per week from the 11th day of July, 1918, to and including the 1st day of June, 1921. It was further alleged in the complaint that the claim of Tavener, had been assigned to her for a valuable consideration, and that she was the owner thereof.

Summons in due form was issued upon the complaint and delivered to the sheriff of the county for service. The manner of making service, as shown by the sheriff's return, was as follows:

"I served said summons upon M. K. Tavener, agent for Boston Acme Mines Corporation, defendant in Morgan City, Morgan county, state of Utah, on the 1st day of June, 1921, by then and there delivering to and leaving with said M. K. Tavener, defendant personally, a true copy of the within summons. I do further certify and return that at the time of the service of said summons upon said M. K. Tavener, defendant, as aforesaid, I indorsed upon said copy so served the date and place of service, adding thereto my name and official title."

The summons recited that within 10 days the complaint would be filed with the clerk. The defendant failing to appear in answer to the summons, a default judgment was entered June 30, 1921, in which it was recited that due and legal service of the summons had been made upon the defendant. The judgment roll containing the above matter, and also the sheriff's certificate of sale of the property on execution, was offered in evidence by defendant as proof of his title to the property. Plaintiff objected to the offered evidence as being insufficient and void on its face in not showing that the court ever acquired jurisdiction of the cause. It was further objected that the proceedings

did not show that the summons was ever lawfully served upon the Boston Acme Mines Corporation. The objection was overruled, exception taken, and the evidence admitted.

In the foregoing statement, as before suggested, we have endeavored to disregard immaterial matter which might have a tendency merely to befog the issues without serving any useful purpose. It may be necessary in the course of this opinion to make more specific reference to other features of the case having more or less bearing upon the material issues.

Under the statement we have made, the controlling questions seem to be: (1) Was the sale of the property from the Boston company to the plaintiff in May, 1919, a valid sale, and did it pass the title as against the defendant and his assignor? (2) Was the judgment in favor of Hattie Tavener, rendered June 30, 1921, against the the Boston Acme Mines Corporation, a valid judgment and invulnerable to collateral attack?

1. The defendant contends that the alleged sale of the property from the Boston company to the plaintiff was invalid and insufficient to convey the title. The contention is based on numerous grounds: (a) The deed does not describe the property. (b) There was no change of possession. (c) There was no resolution of the board of the Boston company authorizing the sale. (d) The directors of the plaintiff company were also directors of the Boston Company. (e) The sale was not ratified or confirmed by a majority of the stock outstanding. These contentions will be considered in the order above stated.

Under proposition (a), that the property was not sufficiently described in the deed to give notice to subsequent purchasers and creditors, it is sufficient to say that, when the alleged sale was made, the machinery in question was situated at the portal of the Morgan Crescent mine, one of the mining properties in which the Boston company had acquired a controlling stock interest, and which was conveyed to plaintiff, together with the machinery. The offer of sale by the Boston company refers specifically to the various mining claims, the interest in which was to be con-

veyed, together with the mining machinery thereon or to be used thereon. Both parties to the transaction knew where the property was and what it consisted of. The record does not disclose that at that time any one was claiming to be a creditor. To all appearances the company was not in debt. As far as subsequent purchasers were concerned, there were none until defendant bought at the execution sale, and of course he purchased the property with all its infirmities of title. There being no one concerned except the seller and the buyer, Comp. Laws Utah 1917, § 5157, is controlling:

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

Here an offer to sell was made; the goods referred to were all of the machinery on, or to be used on, the mining claims to be conveyed. The offer was accepted and an order given, in consideration thereof, for certificates of stock to be delivered on presentation of the order. This was sufficient intimation of acceptance on the part of the buyer, and as between the seller and the buyer it operated as a complete transfer of title to all the machinery on, or to be used on, the mining claims referred to in the offer. The deed was unnecessary as far as the mining machinery was concerned, and no other property is involved in the instant case. Besides this, it was evidently intended that the title should pass immediately. Comp. Laws Utah 1917, § 5127, reads:

"Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred."

(b)   But it is contended there was no change of possession. Defendant relies on section 5135, Comp. Laws Utah, heretofore referred to, which reads as follows:

"Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, and such retention of possession is fraudulent in fact or is deemed

fraudulent under any such rule of law, a creditor or creditors of the seller may treat the sale as void."

In this connection defendant also refers to numerous authorities not necessary to cite in this opinion, for it appears that all of them are cases in which the rights of creditors or subsequent purchasers were involved. As before stated, in this case there was no claim on the part of any one that the company was in debt at the time the transfer was made. It is not alleged in the answer of defendant that the sale was fraudulent as against creditors, either in general or in particular; nor does it allege in any manner or form that when the sale was made the Boston company was indebted to the defendant or to Tavener or to Tavener's wife, under whom the defendant claims title. In these circumstances the defendant has no standing in court as a creditor to attack the validity of the sale. See *Wilson v. Sullivan,* 17 Utah, 341, 53 P. 994, in which there was at least an attempt to plead fraud, but held insufficient to authorize the admission of evidence. But in the instant case the court admitted evidence along that line over plaintiff's objection. The objection should have been sustained.

(c) That there was no resolution of the board of the Boston company authorizing the sale: There is no affirmative allegation in the answer challenging the validity of the sale on this ground. It presents a question of considerable merit, and ought to have been affirmatively alleged in order to give plaintiff fair and reasonable notice; but, as the answer denies generally that plaintiff is the owner of the property sued for, every requisite step necessary to establish plaintiff's title is thereby put in issue. The trial court found that in 1919 four of the directors of the Boston company held a meeting in Baltimore, without giving notice thereof to the other directors; that of the four directors present two were also directors of the plaintiff company; that at said meeting an offer was made by the Boston company to sell its property in Utah to the plaintiff herein, the understanding being that the purchase price was to be all the capital stock of the plaintiff company, to wit, 10,000 shares;

that said stock had no other value than such as might be given to it by the property so agreed to be transferred; that thereafter an instrument purporting to be a quitclaim deed was executed by the president and secretary of the Boston company to the plaintiff without being authorized by the board of directors; that there was at no time a quorum of the directors of the Boston company present at any meeting authorizing the sale of said Utah properties, without including the two directors of the plaintiff company; that the articles of the Boston company do not authorize a sale of corporate property without the consent of the stockholders and the sale was at no time submitted to the stockholders for ratification.

As the articles of incorporation were not offered in evidence at all it is inconceivable how the court ascertained what they did or did not contain. Assuming however, that the articles did not authorize a sale without the consent of the stockholders, and that the stockholders did not ratify the sale, the failure was not a matter of which any one except the Boston company or its stockholders could complain. Such, in our opinion, is the plain meaning and effect of Comp. Laws Utah 1917, § 869, upon which defendant relies. The section, after stating that the corporation has power to sell, lease, convey, etc., ends with the following proviso:

"* * * Provided, that in case the articles of incorporation do not provide for the sale or other disposition of the property of the corporation, then the act of the board of directors shall not be valid or binding on the corporation until confirmed by a vote of a majority in amount of the stock outstanding at a meeting of the stockholders duly called to consider such action of the board. When the articles of association provide that the property of the corporation may be sold, mortgaged, or otherwise disposed of by the directors or by the stockholders, sales made in accordance therewith shall be binding on the company."

The proviso was clearly intended to protect the corporation and its stockholders and no one else, because the statute does not say the sale shall be void, but that "the act of the board of directors shall not be valid or binding on the corporation," etc.

(d, e) We apprehend, however, that the substantial vice in the sale, as conceived in the mind of the trial court, consists in the fact that the sale was made by one corporation to another in which there was a common directorship; that is to say, the directors of the plaintiff corporation were also directors of the Boston company and without the directors of the plaintiff corporation the directors of the Boston company would not have had a quorum. It may be conceded that such proceedings on the part of corporations are sometimes open to grave suspicion. It all depends upon the circumstances attending the transaction. In Fletcher, Cyc. Corp. p. 1857, § 913, it is said:

"If the right to contract exists, it is immaterial that the same officers and stockholders control both contracting corporations, *if there is no bad faith.*" (Italics supplied.)

See, also, *Smith* v. *Chase & Baker Piano Mfg. Co., et al.* (D. C.) 197 F. 466, in which, in the fourth headnote, it is said:

"Corporations controlled and managed by the same officers and stockholders can deal with each other, and courts will not interfere in their internal affairs, unless the action of the majority in control is dishonest or fraudulently oppressive."

The evidence discloses no bad faith in the transaction in question. As before stated, there was no one at that time claiming to be a creditor. The plaintiff company had just been organized for the purpose of taking over the Utah holdings of the Boston company. That company, with a capitalization of $10,000,000, doing business in several states, in order, as found by the trial court, to avoid payment of the corporation tax for doing business in Utah, caused plaintiff corporation to be organized as a subsidiary corporation with a capitalization of only $10,000. The organization of plaintiff company for the purpose aforesaid was advised by Mr. M. K. Tavener himself, predecessor in interest of the defendant in the case at bar. The organization could have been for but one purpose only, and that was to take over the property of the Boston company. The sale and transfer of the property in question was a necessary corollary of the organization. Viewing the transaction from

every possible standpoint, we are unable to find any evidence of fraud or semblance of bad faith against any person or persons, least of all Mr. Tavener or his wife, under whom the defendant claims. It is true the trial court found to the contrary, but the finding is against the clear pre-   4 ponderance of the evidence. As for Mrs Tavener, however meritorious her claim may have been, it arose entirely after the sale and transfer were made. Upon this point there is no conflict in the evidence.

But it was found by the court that, notwithstanding the common directorship of the Boston company, which assumed infirmity we have already considered, the absent directors were not notified of the meeting which authorized the sale, and for that reason it is contended the sale was void. Such no doubt is the general rule, but there are exceptions. Both the rule and exceptions are stated in Fletcher, Cyc. Corp. at page 3078, § 1892, as follows:

"Proceedings by directors at a meeting which was illegal because it was not called by the authority or in the mode prescribed by the charter or by-laws, or because notice was not given to absent members of the board, or because a quorum was not present, or for any other reason, as explained in the preceding sections, are absolutely void, unless afterwards ratified, or unless the corporation is estopped as against innocent third persons. However, no one but stockholders or creditors can attack an assignment by a corporation on the ground that it was not authorized at a regular meeting of the directors; such defect in authorization is not available as a defense in an action by the assignee against third persons."

The author cites, in support of the text, *Dunshee* v. *Standard Oil Co.*, 165 Iowa, 625, 146 N. W. 830. That case in principle is analogous to the case at bar. Plaintiff as assignee of a corporation brought an action against the Standard Oil Company and recovered judgment. The corporation had assigned all its property to the plaintiff except its books of account and bills receivable. The point was made on appeal by the defendant that the assignment was illegal, and that the plaintiff had no right to sue because the assignment was not authorized at a regular meeting of the board of directors but at a special meeting at which there was

only a bare majority of the board present. It was also contended that the absent directors had no notice of the meeting. In passing upon the question, the court, in the course of its opinion, at page 834 of the report (165 Iowa, 635), said:

"It is now claimed that under the alleged assignment to Dunshee no rights passed, for that it was not authorized at a regular meeting of the board of directors, but at a special meeting at which only a bare majority of the board were present; the other directors not having had notice of the meeting. Upon this and collateral questions of ownership of the claim growing out of the facts, we find it unnecessary to give consideration upon their merits, although it is proper to say that the question as to the right of appellee to maintain the suit was not directly raised by the pleadings, excepting by general denial. Nor was this a defense which could be urged by the appellant. Whatever may have been the rights of creditors or stockholders in this corporation to question the validity of the assignment, it covered a claimed right of action, and as to all other parties vested in the holder the right to sue. *Small* v. *C. R. I. & P. Ry.*, 55 Iowa, 582, 8 N. W. 437; *Miller* v. *Iowa Land Co.*, 56 Iowa, 374, 9 N. W. 316; *Carpenter* v. *M. W. A.* [160 Iowa 602], 142 N. W. 411."

The case from which the above excerpt is quoted is practically on all fours with the question under review. Upon this proposition defendant, however, cites *Leary* v. *Bank* (Tex. Civ. App.) 63 S. W. 149, in which the first headnote states the question and the holding of the court:

"Where certain directors of a bank are seeking to purchase certain property from it, they cannot participate as directors in consummating such sale."

This proposition is elementary, but it has no application here. Defendant also cites *Barrie* v. *United Rys. Co.*, 125 Mo. App. 96, 102 S. W. 1078. That case likewise has no application, as will be readily seen upon casual examination. We are also referred to *Williams* v. *Gaylord*, 186 U. S. 157, 22 S. Ct. 798, 46 L. Ed. 1102. In that case a statute of California provided that it shall not be lawful for the directors of any mining corporation to sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation, nor to purchase or obtain, in any way, any additional mining ground,

unless such act be ratified by the stockholders of at least two-thirds of the capital stock of such corporation. The corporation by its directors executed a mortgage upon its mining property, but it was not ratified by the stockholders. The corporation had become indebted to certain mechanics and materialmen in the conduct of its mining business. They brought an action to foreclose their liens, obtained judgment, and became purchasers of the property at the execution sale. The corporation made default in the foreclosure suit, and decree pro confesso was taken against it. In the suit by the mortgagee, the respondents (mechanics and materialmen) pleaded their judgments and claimed title thereunder, and pleaded further that the mortgage was void because it had not been ratified by the stockholders of the corporation. The Supreme Court of the United States, on certiorari from the Circuit Court of Appeals, Ninth Circuit, following an interpretation of the statute made by the California Supreme Court in *McShane* v. *Carter*, 80 Cal. 310, 22 P. 178, held the mortgage void. Defendant in the instant case quotes the following excerpt from the opinion:

"The construction of the act of 1880 [St. 1880, p. 131] was certainly directly presented to the Supreme Court of California, and that construction determined the judgment which was rendered. The court declared that the provisions of the act extended 'to the power or authority of the directors,' and that without the consent of holders of two-thirds of the stock the title did not pass. In other words, the title remained in the corporation; the property remained the property of the corporation and hence the deduction of the court, 'the question can be raised by any one who connects himself with the title of the corporation which owned the property, as well as by the stockholders thereof.'"

There is a marked distinction between the California statute and the Utah statute (section 869); relied on by defendant here. The California statute makes the disposition of the property unlawful unless ratified by the stockholders. The Utah statute says it shall not be binding on the corporation, etc. The clear inference is that such sale is not void as to third parties. Of course such sale or any sale, even if ratified by the stockholders, might be impeachable if made without consideration and with intent to defraud

creditors. Furthermore, as appears from the excerpt quoted
from the opinion of the United States Supreme Court,
and relied on by defendant, the question can be raised
by any one who connects himself with the title of the
corporation which owned the property as well as by the
stockholders thereof. Unless one connects himself with the
title, he cannot raise the question.

Much has been said in the preceding pages in respect to
the relation of debtor and creditor in the instant case. Much
more has been said upon the subject in the briefs of coun-
sel on both sides of the case, and the findings of the court
proceed upon the theory that the relation of debtor and
creditor existed at the time of the sale in question, and that
that relation affected the validity of the sale. Cases, prob-
ably amounting to hundreds, have been cited and copiously
quoted from, notwithstanding the question is entirely out-
side the issues of the case as made by the pleadings. For
these reasons we have deemed it unnecessary to refer to
the cases or to review the findings in detail or consider the
assignments in consecutive order. Nevertheless, before
passing to the next point, it may be of interest to the par-
ties at least to briefly state the facts and circumstances
from which we conclude that no relationship of debtor and
creditor existed at the time of the sale.

First, as to Mrs. Tavener. Her personal claim for $1,600,
upon which her judgment against the Boston company was
partly based, came to her by succession from her mother,
who did not die until November, 1919, six months after the
sale to the plaintiff company.

Second, as to the claim of M. K. Tavener, which, by as-
signment to his wife, is also included in her judgment. As
before stated, Tavener came to Utah in July, 1914, under a
contract of employment by the Boston company to see that
the money it had agreed to pay certain Utah mining com-
panies for stock was expended for the development of their
mining properties. The contention of the Boston company
is that none of the officers of the company was to receive
compensation until the property was placed upon a paying
basis. In the case of Tavener, however, who was a director,

the company agreed to pay the hotel expenses of himself, his wife, and her mother. Mrs. Tavener kept the books of account under Tavener's supervision, between him and the company, and the books show that such expenses were paid until the expiration of the year 1920. During the same period of time voluminous correspondence was carried on between the Taveners and the witness Klem, a common director of plaintiff, and the Boston company in relation to the business. There is no evidence whatever, either in the books or the correspondence, of any contract or arrangement between Tavener and the company for salary or compensation other than the payment of hotel expenses as above set forth, nor was there any charge or claim made by Tavener on account of unpaid salary. The company ceased payment of hotel expenses at the end of 1920, and in March next following the company dispensed with his services, but he was re-elected as a director. In June of the same year Mrs. Tavener instituted her action against the Boston company based upon her personal claim to which we have referred, and upon two claims assigned to her by Tavener, one for money advanced, $894.44, and the other for a balance of salary from July 1, 1918, to June 1, 1921, at $50 per week, amounting to $3,075. The suit was instituted, as far as appears from the record, without any previous demand for payment of salary and without any previous complaint except for balance on account of hotel expenses. Furthermore, as late as February, 1922, Tavener writes to Klem:

"If everything turns out as we hope, don't you think the time would be ripe for salary for service of the officers?"

Why this inquiry, if Tavener already had a contract for salary? Upon cross-examination, when this apparent inconsistency was called to his attention, his explanation was that he meant an "increase of salary." The inquiry made by Tavener is entirely consistent with the contention of plaintiff that no salary was to be paid until the business reached a paying basis. Tavener's explanation of the inquiry is far from satisfactory. The business never did reach a paying basis. The mining property purchased by the .

Boston company had been "salted" for selling purposes, and the company by its purchase became the victim of a stupendous fraud. The time was never ripe for the payment of salaries.

For the reasons stated, we are forced to the conclusion that the Boston company, at the time of the sale in question, was not indebted to Tavener or his wife, and that the finding of the court that the company was indebted to them at the time of the sale is against the clear preponderance of the evidence.

But there are other questions to be considered. It is contended that there was no change of possession of the property after the sale sufficient to notify subsequent creditors and purchasers who might have dealings with the company, and that Tavener had no knowledge of the sale until September, 1921, when the deed was sent to him to be recorded.

As there is some evidence that the Boston company became indebted to Tavener for hotel expenses, and to his wife on her personal account, after the sale of the machinery, the contention respecting a change of possession becomes a material question. In 27 C. J. at page 523, it is said:

"Where there was secrecy attending the conveyance, by which knowledge of it was withheld from subsequent creditors who dealt with the grantor on the faith of his owning the property transferred, the conveyance is fraudulent as to them."

While much could be said on both sides of the question as to whether Tavener, who was a director of both companies, had actual knowledge of the sale, yet in view of the fact that the sale was made in Baltimore in Tavener's absence, he being in Utah, and the further fact that, notwithstanding the voluminous correspondence between Tavener and the company nothing was said about the sale until some time after the entry of the Hattie Tavener judgment, we do not feel justified in finding that either of the Taveners had actual notice of the sale prior to the judgment in the Hattie Tavener Case.

As to the change of possession: As found by the court, the machinery was never removed from the mine, where it was situated when the sale was made, until December,

1921, when it was removed and placed upon the premises of the defendant. It is claimed by the plaintiff that it was placed there under plaintiff's directions, in the defendant's custody, to save it from the waste and spoliation to which it was subjected at the mine. On the other hand, it is claimed by defendant that it was placed in his custody by Tavener to prevent its waste, and also as security for the judgment assigned to him by Hattie Tavener.

As Klem and Tavener were common directors of both companies, and were working at cross-purposes all through the case, it is impossible to say from the evidence before us in whose behalf and for whose benefit many of the acts were performed. As the judgment must be reversed on other grounds, we do not determine in this proceeding whether or not the Taveners had actual notice of the sale before they became creditors of the Boston company. Nor do we determine the merits of their claims, nor whether there was a change of possession after the sale and prior to any indebtedness of the company upon which Hattie Tavener bases her judgment. In any event, if her judgment was void, these questions are immaterial in this proceeding.

2. The validity of the judgment is vigorously challenged, on the ground that the service of the summons was insufficient to confer jurisdiction upon the court. The defendant did not appear, and the judgment was entered by default. If the court did not acquire jurisdiction, the judgment is void even as against a collateral attack. The challenge of plaintiff is a collateral attack, and cannot prevail unless the want of jurisdiction appears on the face of the record constituting the judgment.

The Boston company, at the time it was sued by Hattie Tavener, was a foreign corporation. Compiled Laws 1917, § 6548, subd. 5, provides how a foreign corporation may be served. The section, as far as applicable reads:

"The summons must be served by delivering a copy thereof as follows: * * *

"5. * * * If the defendant is a foreign corporation, or nonresident joint stock company or association, to the president, secre-

tary, treasurer, or other officer thereof, or to the person designated
by such corporation, company, or association, as one upon whom
process may be served. If no such person can be found, then upon
any clerk, superintendent, general agent, cashier, principal director,
ticket agent, station keeper, managing agent, or other agent having
the management, direction, or control of any property of such cor-
poration, company, or association."

The return of the officer in the instant case, hereinbefore
quoted, shows that service was made "upon M. K. Tavener,
agent for Boston Acme Mines Corporation," etc.

Plaintiff challenges the sufficiency of the service, first,
upon the ground that the return does not show what kind
of an agent Tavener was; second, because even if he were
an agent upon whom service could properly be made, such
service could not have been made upon him until effort
had been diligently made to find and serve the president,
secretary, treasurer, or other person of a superior class
named in the statutes; third, Tavener was assignor and bene-
ficially interested in the recovery.

Plaintiff calls our attention to numerous authorities in sup-
port of his contention as to each of the above grounds. Upon
the first proposition, the following are cited: 32 Cyc. 552;
*Honerine Min. & M. Co.* v. *Pipe & Tank Co.*, 31 Utah, 326,
88 P. 9; *Great Western Min. Co.* v. *Mining Co.*, 12 Colo.
46, 20 P. 771, 13 Am. St. Rep. 204; *Dickerson* v. *Railroad
Co.*, 43 Kan. 702, 23 P. 936; *Railway Co.* v. *Pillsbury*, 29
Kan. 652; *Sobrio* v. *Insurance Co.* (C. C.) 72 F. 566.

In Cyc. supra, it is said:

"Service upon a mere agent of the corporation is not sufficient
unless specifically permitted by statute. But in many jurisdictions,
in default of the presence of a member of a superior class of officers,
as already noted, it is expressly provided that service may be
had upon an agent."

The cases above cited support the position of plaintiff
that the agent upon whom service is made must be such as
is named in the statute; otherwise the service is insufficient.
The cases, however, are not conclusive of the question
presented here, because they all appear to be cases of        **7, 8**
direct attack upon the judgment, arising in the court
below upon motion to quash, or some other form of direct

proceeding. In such cases the parties may resort to extrinsic as well as record evidence. There is more latitude allowed in disposing of the question upon its merits.

In support of its second ground of challenge, plaintiff refers to many cases. Before citing them, we quote the following excerpt from 32 Cyc. at page 549:

"By statute provision is usually made as to the persons upon whom service may be had and process must be served upon some one of the persons so designated. The provision is usually for service upon certain general officers of the corporation, and in case such officers cannot be found within the jurisdiction then upon specified inferior officers or agents or employees. In order to justify service upon members of the inferior class it must be shown that service upon members of the superior class cannot be had."

In *St. Louis, Vandalia R. Co.* v. *Dawson et al.,* 3 Ill. App. 118, a case of collateral attack, the return of service reads:

"Served by reading and leaving a copy with C. B. Wade, agent of said company."

The statute controlling and the holding of the court are stated in the headnotes as follows:

"(1)   The statute provides that service may be made upon a corporation by leaving a copy of the summons with the president, secretary, etc., if either can be found in the county; if not, then by leaving a copy of the summons with any director, clerk, etc., of such company found in such county. These constitute two classes, and service upon one class is primary to service upon the other; and before service upon persons of the second class will confer jurisdiction upon the courts, it must appear affirmatively that service could not be had upon persons in the first class.

"(2)   The return of the officer should show that the president of the company did not reside in or was absent from the county; only in that contingency does the statute authorize service on an agent.

"(3)   The return in this case not showing proper service upon defendant, the judgment is void."

In 4 Fletcher, Cyc. Corp. p. 4470 et seq., the author states the rule as follows:

"Under these statutes which provide for service on an officer or class of officers, primarily, with the right to serve others as a secondary mode, if the person served was of the secondary class the return must sufficiently show the facts which warrant service on him, such as that the superiors were not or could not be found

within the state or county or at the proper place for service, or were all absent from the state or county or place of service."

Plaintiff refers to many cases to the same effect. Among the cases so cited is that of *Settlemier* v. *Sullivan*, 97 U. S. 444, 24 L. Ed. 1110. While the case is not a corporation case, the rule above stated undoubtedly applies. Service of summons in that case was made upon defendant's wife. The opinion by Mr. Justice Field states the terms of the statute which in principle are the same as the Utah statute as far as the present question is concerned. We quote the following from the opinion:

"If the certificate of the sheriff were the only document in the record referring to the service of the complaint and notice, there would be no doubt as to the correctness of the ruling of the court below. Service upon the wife of the defendant was not service upon him. No theoretical unity of husband and wife can make service upon one equivalent to service upon the other. Personal citation to the defendant, or his voluntary appearance, is the essential preliminary to a purely personal judgment. The statute of the state in force at the time required service in cases other than those brought against corporations, or persons laboring under some disability, as minors, or as being of unsound mind, to be made by delivering a copy to the defendant personally or, if he could not be found, to some white person of his family above the age of fourteen years, at his dwelling house or usual place of abode. If it be admitted that substituted service of this kind upon some other member of the family is sufficient to give the court jurisdiction to render a personal judgment against its head, binding him to the payment of money or damages, it can only be where the condition upon which such service is permissible is shown to exist. The inability of the officer to find the defendant was not a fact to be inferred, but a fact to be affirmatively stated in his return. The substituted service in actions purely in personam was a departure from the rule of the common law, and the authority for it, if it could be allowed at all, must have been strictly followed."

The case from which we have just quoted was a case in which the judgment was collaterally assailed. See, also, the following cases relied on by plaintiff, all of which lend strong support to plaintiff's contention: *Alexandria* v. *Fairfax*, 95 U. S. 774, 24 L. Ed. 583; *Venner* v. *Denver Union Water Co.*, 15 Colo. App. 495, 63 P. 1061; *Kennedy* v. *Hibernia Co.*, 38 Cal. 151; *Wilmer* v. *Epstein*, 116 Md. 140, 81 A. 379.

Plaintiff's third objection to the sufficiency of the service is that it was made upon M. K. Tavener who was assignor of part of the claim upon which the judgment was based and therefore beneficially interested in its recovery. In support of this objection plaintiff refers to 9 Fletcher, Cyc. Corp. p. 10378, § 6034, in which the author says:

"A statute providing for the service of process upon any agent of a foreign corporation need not contain an exception as to actions brought against it by its agent, that process served on such agent will render such service void. Service of process on an agent otherwise competent, whose relations to the plaintiff are such as to make it to his interest to suppress the fact of service, is insufficient."

In note 54 on the same page we find the following:

"Where a resident director of a foreign corporation, having a claim against it for services rendered and moneys advanced by him to it, assigned his claim to a friend who instituted suit in his name against the corporation purely as a matter of accommodation to his assignor, who was to receive the benefits of the suit, it was held that the service of process on the assignor as a resident director of the foreign corporation was ineffectual to bind the corporation"—citing many cases.

32 Cyc. 554, states the rule as follows:

"Where service is made upon an officer or agent, who, although within the terms of the statute, sustains such a relation to the plaintiff or the claim in suit as to make it to his interest to suppress the fact of service, such service is unauthorized. So service will not be sustained where it is upon a person who is a party plaintiff, or plaintiff's attorney in fact, or is plaintiff's assignor."

The following cases more or less in point are referred to in support of plaintiff's contention: *Atwood* v. *Power Co.*, 148 Mich. 224, 111 N. W. 747, 118 Am. St. Rep. 576; *Min. Co.* v. *Powell*, 30 Colo. 397, 70 P. 679; *Iron & Steel Co.* v. *Iron & Steel Co.* (C. C. A.) 284 F. 550; *Societe & Co.* v. *Barnaby*, 246 F. 68, 158 C. C. A. 294; *C. & M. Co.* v. *Sandoval*, 111 Ill. 32; *Tortat* v. *Mining Co.* (C. C.) 111 F. 426.

Defendant, in answer to plaintiff's objection to the manner of service, refers to many cases where actions were brought in equity to set aside a judgment or restrain its enforcement. The relief was sought upon some equitable ground such as fraud, mistake, etc., and not on the ground of void

process. Here the basis of plaintiff's contention is that the judgment is void for want of proper service; hence the cases cited by defendant of the nature above stated are not in point. But upon the question of service defendant calls the court's attention to numerous cases. *United States Blowpipe Co.* v. *Spencer,* 46 W. Va. 590, 33 S. E. 342. That case appears to have been decided upon the doctrine of the "law of the case," and is not helpful to the court. *Dorente* v. *Sullivan,* 7 Cal. 279, was a case in which judgment was entered by default, Defendant moved to set the default aside because the service of summons was made by a person other than an officer, and the returns were not in compliance with the statute. Defendant's affidavit, however, admitted service, and his application was denied. He appealed from the order and because of his admission of service the judgment was affirmed. In *Stout* v. *Woods,* 79 Ind. 108, the court had jurisdiction of the subject-matter, and the defendant had voluntarily acknowledged service of process. Held, the judgment could not be collaterally impeached. In *Day* v. *Goodwin,* 104 Iowa, 374, 73 N. W. 864, 65 Am. St. Rep. 465, the third headnote reflects the opinion:

"Service appearing on the face of the record to be good, and the court having taken jurisdiction, the judgment is not void; and the extrinsic facts relied on to defeat the service can be shown only on direct attack of the judgment."

In *Wickliffe* v. *Dorsey,* 1 Dana (Ky.) 462, a judgment relied on was collaterally attacked because the service of process was not made within the county where the defendants lived or where the bill was filed. It appears, however, that service was made elsewhere. The court on appeal held, in effect, that the service was merely voidable but not void.

In *Campbell Press & Mfg. Co.* v. *Marder-Luse & Co.,* 50 Neb, 283, 69 N. W. 774, 61 Am. St. Rep. 573, it was held that, where there is an attempt at service reaching the defendant, but a defect in the manner of service, it is a mere irregularity, and the judgment is not open to collateral attack; but, when the attempt at service does not reach the defendant at all, the judgment founded thereon is void.

Reference is also made by defendant to the following

cases: *Hendrick* v. *Whittemore*, 105 Mass, 23; *Kittredge* v. *Martin*, 141 Mass. 410, 6 N. E. 95; *Parmalee* v. *Loomis*, 24 Mich. 242; *Mitchell* v. *Meuley*, 32 Tex. 460; 6 Pomeroy Eq. p. 1116; *Whitaker* v. *First Nat. Bank* (Wyo.) 231 P. 691; *Nolan* v. *Jackson*, 107 Okl. 163, 231 P. 525; *Olson* v. *Wall*, 58 Utah, 20, 196 P. 1014; *Amy* v. *Amy*, 12 Utah, 278, 42 P. 1121; *Hoagland* v. *Hoagland*, 19 Utah, 103, 57 P. 20.

We refrain from commenting upon the last-mentioned cases, for none of them shed light upon the question raised by plaintiff's objection to the service of process. The last two Utah cases, however, are instructive in indicating when a recital of proper service in the judgment will be conclusive against collateral attack. When there is nothing in the judgment roll conflicting with the recital therein, the recital is conclusive. Here the record on its face shows just how the service was made and that it was not made in compliance with the statute. In such case the recital in the judgment is not controlling. *Settlemier* v. *Sullivan*, supra.

We are of opinion that the returns of the officer making the service should have shown that service could not be made upon some officer or person in the superior class, and, if not made upon some one in the superior class, the returns ought to have shown by proper description that the person served came within an inferior class.

The judgment roll in the Tavener Case shows that Tavener was assignor of the plaintiff in that case. We think, both in law and in principle, he was not a proper person to be served with process in an action instituted by his assignee against the company for the reason stated in the authorities from which we have quoted. That Tavener was vitally interested in recovering a judgment against the Boston company must be conceded. The record, considered as a whole, clearly demonstrates the fact. Our views upon this question can be no better expressed than by quoting from the opinion in *Rehm* v. *German Ins. & Sav. Inst.*, 125 Ind. 135, 25 N. E. 173, in which a similar question was involved:

"The proposition that, under any circumstances, the defendant to an action may be compelled to appear and answer, or be sub-

jected to a judgment upon a default, upon service of process upon his adversary, is so out of line with all of our ideas of right and the mode of procedure in courts of justice that we cannot for a moment suppose that the Legislature ever intended to authorize such a proceeding."

In the light of the authorities to which we have referred, and many others which we have considered, we are of opinion that the judgment in question is void for lack of proper service, and that the admission of the judgment roll in evidence over plaintiff's objection was error.

For the manifest errors to which we have referred, the judgment in this case must be reversed. Were it not for the fact that defendant holds the property under void process, we would deem it our duty to remand the case for a new trial, with leave to defendant to amend his pleadings and bring in new parties so as to present the possible issues which we have expressly referred to but have not determined. As the record stands in the instant case, the plaintiff is entitled to the relief prayed for in its complaint.

It is therefore ordered that the judgment be reversed, and the cause remanded, with directions to the trial court to enter findings and judgment for the plaintiff, at respondent's cost.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.